

*1046662478*

## IN THE DISTRICT COURT OF TULSA COUNTY
## STATE OF OKLAHOMA

| | |
|---|---|
| **(1)  DEBORAH LOGAN**, special administrator of the Estate of **DARIUS HATFIELD** | ) **CJ -2020 - 01758** |
| **Plaintiff,** | ) Case No.: CJ-2020-<br>) HON. REBECCA NIGHTINGALE |
| **V.** | ) |
| **(1)  VIC REGALADO**, in his official capacity as **TULSA COUNTY SHERRIFF**, and individually; | ) **ATTORNEY LIEN CLAIMED**<br>)<br>) **JURY TRIAL DEMANDED** |
| **(2)  DAVID PARKER**, in his official capacity as **TULSA COUNTY JAIL ADMINISTRATOR**, and individually; | ) |
| **(3)  BOARD OF COUNTY COMMISSIONERS OF TULSA COUNTY;** | ) **DISTRICT COURT** |
| **(4)  TURN KEY HEALTH, LLC** d/b/a/ **TURN KEY MEDICAL, and TURN KEY;** | ) **F I L E D** |
| **(5)  JAILER JOHN DOE I**, individually; | ) JUN - 2 2020 |
| **(6)  JAILER JOHN DOE II**, individually; | ) **DON NEWBERRY, Court Clerk** |
| **(7)  NURSE JANE/JOHN DOE III,** individually; | ) **STATE OF OKLA. TULSA COUNTY** |
| **(8)  NURSE JANE/JOHN DOE IV,** individually; | ) |
| **Defendants.** | ) |

### PETITION

**COMES NOW** THE PLAINTIFF, Deborah Logan, the duly appointed and acting Special

Administrator of the Estate of Darius Hatfield, by and through her attorneys of record, G. Gene

Thompson, Esq., Margaret Cook, Esq., and Keri D. Palacios of CREEK COUNTY LAW, PLLC,

and Andrew M. Casey, Esq. of FOSHEE AND YAFFE, and in filing this, her Petition, for her

causes of action against the Defendants, alleges and states the following, to-wit:

### INTRODUCTORY STATEMENT

1.      A Jailer found Darius Hatfield ("Mr. Hatfield") hanging from a bed sheet in his jail

cell at the Jail operated by Tulsa County ("David L. Moss").

**EXHIBIT 1**

2.     At all relevant times, Mr. Hatfield was in the legal and physical custody of David L. Moss as a matter of pre-trial detention prior to the formal filing of charges and his Initial Appearance regarding the horrible, and tragic accident, resulting in the death of his girlfriend Patricia Duff.

3.     David L. Moss contracted with Turn Key, LLC ("Turn Key") to provide medical staff and services at David L. Moss in accordance with the institution's constitutional duties to provide adequate healthcare to the inmate population of the facility.

4.     On information and belief, Mr. Hatfield displayed many indications of depression, despair, and general malaise throughout the booking and intake process while at David L. Moss. Mr. Hatfield was grieving the loss of both his girlfriend, Ms. Duff, and his brother whom he had freshly lost to cancer. So fresh was his grief that he had recently returned from spreading his brother's ashes near Tahlequah on the day the horribly tragic accident that led to both Ms. Duff's death and Mr. Hatfield's arrest occurred. He further lamented the fact that his elderly mother was in town from Texas for her son, Mr. Hatfield's brother, and was at Ms. Duff's when the accident occurred and had to witness Mr. Hatfield's arrest.

5.     Between his arrest on May 31st 2018 and June 3rd 2018 Mr. Hatfield was in custody and on information and belief openly exhibited both depressive and suicidal thoughts and ideations that were communicated to both the staff and medical staff of David L. Moss and Turn Key. His loss of hope, state of despair, and will to live, was on information and belief, communicated to a Chaplin who was so concerned that they communicated with Mr. Hatfield's family about his mental state and condition.

6.     On June 3rd 2018, a jailer, observed Mr. Hatfield attempting self-harm and suicide in his cell by choking himself to death. Rather than taking immediate action to provide Mr. Hatfield

the medical care that he so desperately needed, and taking measures to secure Mr. Hatfield in a safe environment where it would not be possible for him to commit further self-harm, the jailer coldly and callously left Mr. Hatfield alone, unguarded, in his jail cell with multiple instrumentalities by which he could harm himself, including the sheet, or blanket, with which Mr. Hatfield ultimately hung himself.

7.     Only after at least thirty (30) minutes had elapsed did the jail staff return to further check on Mr. Hatfield's wellbeing. Unbelievably, and unconscionably, the jailer returned to find Mr. Hatfield had hung himself. Mr. Hatfield did not instantly die at this point, but never regained consciousness, and he passed on June 5th 2018 at Hillcrest Medical Center.

8.     The employees of both David L. Moss, the Tulsa County Sherriff's office, and Turn Key were clearly on notice of Mr. Hatfield's serious, emergent, and immediate medical issues. The jailer communicated to the Emergency Medical Personnel who transferred Mr. Hatfield by ambulance from David L. Moss to Hillcrest that he witnessed Mr. Hatfield choking himself stating he wanted to die, that he then left Mr. Hatfield unattended for thirty (30) minutes, and then returned to Mr. Hatfield's cell to find he had hung himself. Turn Key and David L. Moss personnel ruthlessly disregarded the known, obvious, and excessive risk to Mr. Hatfield's health and safety. Mr. Hatfield clearly was not given adequate, or timely, medical treatment despite his obvious needs.

9.     Instead of being placed on suicide watch, placed in medical isolation, and placed in an environment where he did not have access to instrumentalities of self-harm, David L. Moss personnel allowed him to stay in his cell, unsupervised, with sheets/blankets and other instruments of self-harm readily available to him immediately following a clear incident of self-harm without even a thought of providing, and he receiving, the medically appropriate treatment and care he so

desperately and obviously needed to protect him and save his life.

        10.      Consistent with the established policies, practices, and/or customs, the Defendants herein failed to provide Mr. Hatfield with adequate and timely medical care and failed to take other measures to protect him from physical harm, in deliberate indifference to his health and safety.

        11.      The Plaintiff herein brings this civil rights action for damages resulting from the unnecessary, cruel, and brutal death of Mr. Hatfield at David L. Moss. The personnel and command of David L. Moss, the Tulsa County Sherriff's Department, and Turn Key violated numerous laws and jail standards while Mr. Hatfield was in their custody. As a result of these violations, and the deliberate indifference they embody, the Defendants did not respond to Mr. Hatfield's acute medical and/or psychiatric crisis over the time he was detained, and this failure resulted in Mr. Hatfield's death in June 5th 2018. This unnecessary tragedy caused Mr. Hatfield to suffer and his family to experience extreme grief and loss of yet another beloved family member within such a short time.

## PARTIES, JURISDICTION, AND VENUE

        12.      The Plaintiff is the duly appointed and acting Special Administrator of the Estate of Darius Hatfield, she is a resident of the State of Texas, and the Estate is being administered in Tulsa County, State of Oklahoma, the home County of Mr. Hatfield.

        13.      The Defendant Vic Regulado ("Regulado") is the current acting, and at all relevant times was, the Sherriff of Tulsa County, State of Oklahoma, residing in Tulsa County, Oklahoma and acting under the color of state law. Regulado is sued in his individual and official capacities. It is settled law in the Tenth Circuit that a claim brought pursuant to 42 U.S.C. § 1983 against a county sheriff in his official capacity "is the same as bringing suit against the county." *Martinez v. Beggs*, 563 F. 3d 1082, 1091 (10th Cir. 2009); *See also Porro v. Barnes*, 624 P.3d 1322, 1328 (10th

Cir. 2010); *Bame v. Iron Cnty.*, 566 F. App'x 731, 737 (10th Cir. 2014). As Tulsa Sherriff, in his official capacity, Regulado is the final policymaker responsible for Tulsa County/Tulsa County Sherriff's Office ("TCSO") rules, regulations, policies, practices, procedures, and/or customs, including the policies, practices, procedures, and/or customs that violated Mr. Hatfield's rights as set forth in this Petition, and who was, in part, responsible for overseeing Mr. Hatfield's health and well-being, and assuring that Mr. Hatfield's medical needs were met. Additionally, Regulado was responsible for overseeing the conduct and care provided by sub-contractors inclusive of Turn Key. Regulado may not abdicate his constitutional non-delegable duty to provide proper medical care by shifting the same onto a third-party contract such as Turn Key.

14.     Defendant Board of County Commissioners of Tulsa County ("BOCC") is a statutorily created governmental entity. 57 O.S. § 41 provides that "[e]very county, by authority of the board of county commissioners and at the expense of the county, shall have a jail or access to a jail in another county for the safekeeping of prisoners lawfully committed." BOCC must discharge its responsibilities for David L. Moss in a non-constitutionally infirm manner. BOCC was, at all relevant times hereto, responsible for providing medical services to Mr. Hatfield while he was in the custody of David L. Moss, within the confines of Tulsa County, State of Oklahoma. BOCC was further responsible for implementing jail policies regarding medical care, assisting in developing those polices and in training and supervising employees with regard to said policies. Further, at least in part, BOCC was responsible for overseeing the conduct and care provided by sub-contractors inclusive of Turn Key. Further, BOCC may not abdicate their constitutional non-delegable duty to provide proper medical care by shifting the same onto a third-party contract such as Turn Key.

15.     The Defendant David Parker ("Parker") is the current acting, and at all relevant

times was, the Jail Administrator of Tulsa County, State of Oklahoma, residing in Tulsa County, Oklahoma and acting under the color of state law. Parker is sued in his individual and official capacities. Based on settled law in the Tenth Circuit that establishes a claim brought pursuant to 42 U.S.C. § 1983 against a county sheriff in his official capacity "is the same as bringing suit against the county." *Martinez v. Beggs*, 563 F. 3d 1082, 1091 (10th Cir. 2009); *See also Porro v. Barnes*, 624 P.3d 1322, 1328 (10th Cir. 2010); *Bame v. Iron Cnty.*, 566 F. App'x 731, 737 (10th Cir. 2014), bringing suit against Parker, should Regulado have delegated final policymaking authority to Parker, should also be the same as bringing suit against Regulado and therefore the County. As Jail Administrator, in his official capacity, Parker is alternately, if such authority was delegated by Regulado, the final policymaker responsible for Tulsa County/Tulsa County Sherriff's Office ("TCSO") rules, regulations, policies, practices, procedures, and/or customs, including the policies, practices, procedures, and/or customs that violated Mr. Hatfield's rights as set forth in this Petition, and who was, in part, responsible for overseeing Mr. Hatfield's health and well-being, and assuring that Mr. Hatfield's medical needs were met. Additionally, Parker was alternately responsible for overseeing the conduct and care provided by sub-contractors inclusive of Turn Key. If so delegated by Regulado, Parker may not abdicate his constitutional non-delegable duty to provide proper medical care by shifting the same onto a third-party contract such as Turn Key

16.     Defendant, Turn Key Health Clinics, LLC ("Turn Key"), is a domestic Limited Liability Company in the State of Oklahoma, doing business within the confines of Tulsa County, State of Oklahoma. Turn Key was at all relevant times herein contracted to provide some or all of the medical needs to David L. Moss. Turn Key was at all relevant times hereto, responsible, in whole or in part, for providing medical services to Mr. Hatfield while he was in custody at David

L. Moss. Turn Key was additionally responsible, in whole or in part, for implementing David L. Moss' policies and procedures regarding medical treatment, and in assisting in developing those policies and training and supervision of its employees and/or agents.

17.     Defendants, Jailers John Doe I & II, at all relevant times hereto, were employed by David L. Moss and were deliberately indifferent to Mr. Hatfield's medical needs and safety, violated his civil rights, wrongfully caused his death, and or encouraged, enabled and or ordered other Defendants to engage in such conduct.

18.     Defendants, Nurses John/Jane Doe III & IV, at all relevant times hereto, were employed by Turn Key and were deliberately indifferent to Mr. Hatfield's medical needs and safety, violated his civil rights, wrongfully caused his death, and or encouraged, enabled and or ordered other Defendants to engage in such conduct.

19.     The events complained of herein occurred within the confines of Tulsa, County, State of Oklahoma making jurisdiction and venue proper in this Honorable Court.

## FACTUAL ALLEGATIONS

20.     The Plaintiff re-alleges and incorporates by reference paragraphs 1 through 19, as through fully set forth herein.

21.     Both within the applicable statute of limitations, and for many years prior thereto, the BOCC and Regulado (alternately Parker) have been in charge of David L. Moss where their unconstitutional policies and procedures, or failure to enact or enforce constitutional policies and procedures have allowed inmates to be withheld treatment and/or medication that is necessary for their health and wellbeing.

22.     All conduct complained of herein by Regulado, Parker, BOCC, and Turn Key and their respective employees was performed while acting under the color of law, and within the

meaning of 42 U.S.C. § 1983.

23.     Recognizing the vulnerability of persons whom are detained at a county jail, for whatever reason, and the county's responsibility to provide care for any serious medical need and/or protection from self-harm, the United States Constitution requires that proper medical attention and/or medications be provided.

24.     Regulado, Parker, BOCC, and Turn Key had a policy, custom, or practice that created an environment with their respective employees that encouraged the failure to provide treatment or protections to inmates exhibiting suicidal thoughts, ideations, or symptoms.

25.     Mr. Hatfield was arrested on May 31st 2018 following spending the day with his friends and family grieving the death of his brother who had been recently lost to cancer. Mr. Hatfield and friends spread his brother's ashes near Tahlequah and returned to his girlfriend Patricia Duff's home in Sand Springs. Mr. Hatfield's mother was in from Texas, but unable to travel to the wilderness location where Mr. Hatfield's brother's ashes were spread, and was at Ms. Duff's home when Mr. Hatfield and his friends returned from Tahlequah.

26.     At some point Mr. Hatfield and Ms. Duff were outside her home in the front yard and a horrific accident happened as the couple was handling a firearm, which inadvertently discharged, killing Ms. Duff.

27.     Law enforcement was called to the scene. The Tulsa County Sherriff's office responded and arrived at the home at approximately 5:30 pm on May 31, 2019. Mr. Hatfield was arrested. On information and belief Mr. Hatfield was exhibiting visible, and substantial, distress and grief both at Ms. Duff's home and during the transport to David L. Moss. During the booking and intake process his condition is not believed to have improved and his general mental state continued to deteriorate.

28.     On information and belief the deterioration of Mr. Hatfield's mental state continued, and his depressed state and general malaise was evident to both the jail staff and Turn Key staff that interacted with him. On information and belief His mental state had so deteriorated during the time between his arrival at David L. Moss and the early morning hours of June 3rd he reached out to and was visited by a Chaplin who later reached out to Mr. Hatfield's family out of concern.

29.     During the early morning hours of June 3rd 2018 a jailer believed to be conducting a welfare check witnessed Mr. Hatfield trying to choke himself. Rather than taking corrective action to protect Mr. Hatfield, and to place him in medically appropriate protective custody, by placing him on any form of suicide protocol, the jailer left Mr. Hatfield alone, unmonitored, in his jail cell for approximately thirty (30) minutes.

30.     Mr. Hatfield, despite immediate, obvious, and known suicidal ideations, impulses, and acts was left wholly unsupervised or monitored in a cell with sheets and blankets readily available to him as instrumentalities of self-harm.

31.     This cold-hearted and callous indifference to the health, welfare, safety and life of Mr. Hatfield ultimately cost him his life as the jail staff, on returning to his cell after thirty (30) minutes with no one observing him, found Mr. Hatfield hanging lifeless from the ceiling with a noose made of a bed sheet.

32.     Despite having knowledge that Mr. Hatfield was at risk for committing suicide, and in fact was witnessed attempting to do so by jail staff, the Defendants herein were deliberately indifferent to Mr. Hatfield's rights, safety, and known and emergent medical needs.

33.     In fact, despite said knowledge the Defendants herein took no action to prevent, or contain, the risk that Mr. Hatfield would be successful in further attempts at suicide.

34.     Paramedics arrived at David L. Moss and found Mr. Hatfield in cardiac arrest without a pulse. EMS administered CPR on the way to the hospital which momentarily restored Mr. Hatfield's pulse. However, the pulse was again lost on arrival at Hillcrest and CPR was again administered. At no time from the presentation of Mr. Hatfield to EMS by David L. Moss staff was any neurological activity, beyond the minimal occasional respiratory effort, observed.

35.     Although extraordinary efforts were made by the medical staff to resuscitate Mr. Hatfield, including CPR and intubation, he was in pulseless electrical activity cardiac arrest with no neurological activity from the time he was found by David L. Moss staff. Although artificially ventilated and kept on life support through June 5th 2018, when he was ultimately declared dead, Mr. Hatfield's life ended on June 3rd at David L. Moss with the suicide attempt he made subsequent to being found attempting to choke himself to death.

## CLAIMS FOR RELIEF

### First Claim

**Cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the Constitution of the United States (42 U.S.C. § 1983) against all Defendants**

36.     The Plaintiff re-alleges and incorporates by reference paragraphs 1 through 35, as through fully set forth herein.

37.     Defendants Regulado, Parker, BOCC, Turn Key, Jailers John Doe I & II and Nurses John/Jane Doe III & IV knew there was a strong likelihood that Mr. Hatfield's behaviors and statements indicated he was having suicidal thoughts and ideations, and was undertaking attempts at self-harm, and that these medical conditions would cause death or permanent injury. Mr. Hatfield had obvious, serious, and emergent medical and psychological issues and needs unknown to the Plaintiff at the time, but made known to the Defendants herein throughout the time Mr. Hatfield was in the custody of David L. Moss.

38.     Nonetheless, these Defendants callously disregarded the known and obvious risks to Mr. Hatfield's health and safety.

39.     All Defendants failed to provide, *inter alia,* an adequate or timely medical evaluation, any assessment, or adequate medical monitoring and supervision or to otherwise care for Mr. Hatfield, while he was placed under their care, in deliberate indifference to Mr. Hatfield's serious medical needs, health, safety, and life.

40.     As a direct and proximate result of all Defendants' conduct, Mr. Hatfield experienced severe emotional distress, severe mental anguish, loss of his life and all other compensatory damages alleged herein.

41.     There is an affirmative link between 1) the above-mentioned acts and/or omissions of the Defendants herein being deliberately indifferent to Mr. Hatfield's serious medical needs, health, safety, and life, and 2) the policies, practices, and/or customs which Regulado, Parker, BOCC, and Turn Key each promulgated, created, implemented and/or were responsible for maintaining.

42.     Such policies, practices, and/or customs include, but are not limited to:

a.   The failure of each entity, or individual, to promulgate, implement, or enforce, adequate medical treatment, or supervision policies responsive to the serious medical needs of inmates like Mr. Hatfield;

b.   Inadequate medical triage screening by law enforcement officers, or at David L. Moss, that fails to identify inmates with serious medical needs;

c.   Severe limitation of the use of off-site medical service providers, even in emergent situations at David L. Moss.

d.   Untimely medical examinations and treatment at David L. Moss;

e. Understaffing medical personnel at David L. Moss, underfunding of operations at David L. Moss, or under-training employees and/or officers on how to identify, assess, or react to emergent medical situations;

f. The failure to supervise, oversee, or otherwise require the mental health evaluations or suicide watch once an emergent suicide risk was determined;

g. The failure to do routine checks on inmates exhibiting suicidal behaviors and statements;

h. The persistent ignoring of suicidal statements and acts by inmates.

43.     All Defendants knew and/or it was obvious that the maintenance of the aforementioned policies, practices, and/or customs posed an excessive risk to the health and safety of inmates like Mr. Hatfield.

44.     All Defendants disregarded the known and/or obvious risks to the health and safety of inmates like Mr. Hatfield.

45.     All Defendants, through continued encouragement, ratification, and approval of the above noted policies, practices, and//or customs, in spite of their known and/or obvious inadequacies and dangers, have been deliberately indifferent to inmates', including Mr. Hatfield's, serious medical needs.

46.     There is an affirmative link between the unconstitutional acts of David L. Moss' subordinates, and the adoption and/or maintenance of the aforementioned policies, practices, and/or customs.

47.     As a direct and proximate result of the aforementioned policies, practices, and/or customs, Mr. Hatfield experienced severe physical pain, severe emotional distress, severe mental anguish, loss of his life, and all other compensatory damages alleged herein, or otherwise

recoverable by his estate or its beneficiaries.

48.     At all times pertinent hereto, all Defendants were acting under color of state law.

49.     Regulado, Parker, BOCC, and Turn Key were charged with implementing and developing the policies of David L. Moss with respect to the medical care of inmates at the facility, and have the responsibility to adequately train and supervise said employees.

50.     Regulado, Parker, BOCC, and Turn Key are involved in, and exert control over, David L. Moss' medical program.

51.     Regulado, Parker, BOCC, and Turn Key control the policies and practices of David L. Moss, particularly with respect to medical care provided at David L. Moss.

52.     There is an affirmative link between the depravation of Mr. Hatfield's right to be free from cruel and unusual punishment and the policies, practices, and/or customs which Regulado, Parker, BOCC, and Turn Key promulgated, created, implemented, and/or were responsible for maintaining.

53.     Such policies, practices, and customs include, but are not limited to:

    a.  The failure to promulgate, implement, or enforce adequate medical treatment policies responsive to the serious medical needs of inmates like Mr. Hatfield;

    b.  Inadequate medical triage screening that fails to identify inmates with serious medical needs, including suicidal thoughts and ideations;

    c.  Severe limitation of the use of off-site medical and diagnostic service providers, even in emergent situations;

    d.  Untimely medical examinations and treatment;

    e.  Understaffing of medical personnel at David L. Moss, under-training employees and/or officers on how to identify, assess, or react to emergent medical situations,

and/or underfunding of medical operations;

   f.   The failure to adequately train personnel and/or staff with respect to the proper assessment, classification, and treatment of inmates with serious medical needs;

   g.   The failure to allow for transport to off-site providers when necessary or prudent;

   h.   The failure to supervise, oversee, or otherwise require the medical staff to actually discharge their duties in protection of inmate health and safety;

   i.   The failure to do routine checks on inmates;

   j.   The failure to isolate, and put on suicide watch, inmates who have exhibited suicidal statements or acts of self-harm;

   k.   David L. Moss' consistent ignoring of complaints; and

   l.   The ratification, via final policymakers, of employees complete and deliberate indifference to inmates at David L. Moss.

54.    The Defendants knew, and/or it was obvious that the maintenance of the above-mentioned policies, practices, and/or customs posed an extreme risk to the health and safety of inmates like Mr. Hatfield.

55.    All Defendants disregarded the known and/or obvious risks to the health and safety of inmates like Mr. Hatfield. Jailers John Doe I & II and Nurses John/Jane Doe III & IV, as well as other jail and medical staff interacted and observed Mr. Hatfield's despaired state and suicidal statements and overt acts of self-harm/attempted suicide on multiple occasions before his final suicide attempt that left him neurologically dead, without taking any action to aid or protect him by providing him the medical and psychological care that he so desperately needed.

56.    All Defendants openly and cruelly disregarded the known and/or obvious risks to the health and safety of inmates like Mr. Hatfield.

57.     All Defendants tacitly encouraged, ratified, and/or approved of the acts and/or admissions alleged herein, knew (and/or it was obvious) that such conduct was unjustified and would result in violations of constitutional rights, and were deliberately indifferent to the serious medical needs of inmates like Mr. Hatfield

58.     As a direct and proximate result of the above-mentioned policies, practices, and/or customs, Mr. Hatfield experienced  damages in excess of $500,000.00 including severe physical pain, severe emotional distress, severe mental anguish, loss of his life, and all other compensatory damages alleged herein or otherwise recoverable by his estate.

59.     Additionally, Plaintiff is entitled to attorney's fees, costs of this action, interest as provided for by law, and any other relief that is found to be proper and just given the egregious nature of the claims herein.

## Second Claim

### Supervisory Liability (42 U.S.C. § 1983) against Regulado, Individually; Parker, Individually

60.     The Plaintiff re-alleges and incorporates by reference paragraphs 1 through 59, as through fully set forth herein.

61.     Regulado, and/or Parker breeched a duty to Mr. Hatfield, which was the proximate cause of his injuries. Specifically, Regulado and/or Parker personally involved himself in the violations of Mr. Hatfield's constitutional rights by participating in the creation of flawed training protocols, and acknowledged tolerance of a multitude of constitutionally infirm activities of his subordinates. These include 1) failure to provide adequate or timely medical evaluation or assessment; 2) failure to take immediate measures placing inmates into protective custody in the form of a suicide prevention protocol when the inmate exhibits suicidal communications and ideations; 3) failure to take immediate measures placing inmates into protective custody in the

form of a suicide prevention protocol when the inmate is observed doing acts of self-harm in an attempted suicide; 3) failure to remove potential instrumentalities of harm, such as bed sheets, from the cell of inmates clearly exhibiting suicidal communications and ideations and/or observed doing acts of self-harm in an attempted suicide; 4) failing to administer prescribed medications, and; 5) severely curtailing and deterring the use of off-site medical and psychological providers for in-custody inmates.

62.     Further, Regulado and/or Parker exercised control, and discretion, over all other Defendant's activities who committed prior instances of ignoring medical needs against similarly situated citizens. Regulado and/or Parker additionally failed to properly discipline, and supervise, employees or subcontractors that engages in deliberately indifferent and/or negligent actions towards inmates. Regulado and/or Parker knew of said violations of citizens constitutional rights and acquiesced in their continuance.

63.     Regulado and/or Parker promulgated, created, implemented, and/or utilized policies that caused the depravation of Mr. Hatfield's rights. Regulado and/or Parker knew, and/or it was obvious the maintenance of the above-mentioned formal policies, practices, and/or widespread customs and the failure to train and properly supervise jail and medical staff would result in the exact types of Constitutional violations as those experienced by Mr. Hatfield. The Constitution of the United States mandates that Regulado and/or Parker, in a supervisory role over all officers, promulgate, create, and/or maintain a series of rules and procedures designed to prevent unconstitutional injury, such as that experienced by Mr. Hatfield.

64.     Poorly trained, and improperly supervised, jail and medical staff present a known, immediate, and obvious risk of abuse of power to the inmate population of David L. Moss. Regulado and/or Parker disregarded the known and obvious risks to citizens, including Mr.

Hatfield, and acquiesced, enabled, and ratified the actions of his subordinates.

65.    David L. Moss jail and medical staff acted in accordance with the above-mentioned rules and procedures emanating from, and promulgated by Regulado and/or Parker. In the alternative the David L. Moss jail and medical staff acted in accordance, and as a result of, the failure to be trained supervised, or dismissed, and, in so doing, proximately caused the damages incurred by Mr. Hatfield.

66.    As a direct and proximate result of Regulado and/or Parker's actions, Mr. Hatfield suffered both excruciating untreated mental anguish over the loss of his loved ones and his detention, the physical pain of multiple suicide attempts, and ultimately lost his life.

67.    As a result of the above, the Plaintiff, Deborah Logan, as Special Administrator of her beloved brother's estate, demands a judgement herein against Regulado and/or Parker for compensatory damages in the amount of $500,000.00.

## Third Claim

**Municipal Liability (42 U.S.C. § 1983) against BOCC and their final policymaker Regulado and/or Parker, in their official capacity**

68.    The Plaintiff re-alleges and incorporates by reference paragraphs 1 through 67, as through fully set forth herein.

69.    Regulado and/or Parker is responsible for the promulgation, creation, implementation, and enforcement of the rules, procedures, policies, and widespread customs of David L. Moss and its employees. At the time of Mr. Hatfield's attempted suicide and related death, Regulado and/or Parker occupied the role as final policy maker.

70.    The following, amongst others that will be developed in discovery, informal customs or practices are so persistent, pervasive, and widespread that they are the standard

operating procedure for David L. Moss:

    a.  failure to provide adequate or timely medical evaluation or assessment;

    b.  inadequate medical triage screening;

    c.  understaffing the medical unit;

    d.  failure to adequately train jail and medical staff employees and/or agents with respect to proper assessment, classification, and treatment of inmates with serious physiological and/or psychological health needs;

    e.  failure to promote necessary documentation regarding the provision of healthcare generally, and specifically information regarding inmates exhibiting suicidal thoughts, communications, ideations, and acts of self -harm;

    f.  failure to refer emergent situations, especially those relating to attempted suicide to the nursing staff;

    g.  severely curtaining, and deterring use of off-site medical and psychological providers for in-custody inmates;

    h.  failure to take immediate measures placing inmates into protective custody in the form of a suicide prevention protocol when the inmate exhibits suicidal communications and ideations;

    i.  failure to take immediate measures placing inmates into protective custody in the form of a suicide prevention protocol when the inmate is observed doing acts of self-harm in an attempted suicide;

    j.  failure to remove potential instrumentalities of harm, such as bed sheets, from the cell of inmates clearly exhibiting suicidal communications and ideations and/or observed doing acts of self-harm in an attempted suicide;

k.  failing to administer prescribed medications, and;

l.  severely curtailing and deterring the use of off-site medical and psychological providers for in-custody inmates.

71.  Regulado and/or Parker also exercised control and discretion over all other Defendant's activities who committed prior instances of ignoring attempted suicides, and other medical needs, against similarly situated citizens.

72.  Regulado and/or Parker additionally failed to properly discipline and supervise employees or subcontractors that engaged in deliberately indifferent actions toward inmates.

73.  There is an affirmative link between the above-mentioned acts and omissions of the Defendants and the informal customs or practices of David L. Moss via their final policymaker Regulado and/or Parker. The customs and/or practices are the direct cause in fact of Mr. Hatfield's Constitutional injury.

74  Additionally, BOCC via their final policymaker Regulado and/or Parker is responsible for the adequate training and supervision of all jail and medical staff employed by David L. Moss and Turn Key. The training related to preservation of Constitutional protections and adequate medical treatment are designed to protect the Constitutional rights of citizens from errors of jail and medical staff in the performance of their duties. Supervision allows for oversight and correction of Constitutionally infirm behavior and practices. Regulado and/or Parker failed to adequately train and/or supervise his jail and medical staff related to adequate medical treatment and Eighth and Fourteenth Amendment protections afforded pursuant to the United States Constitution. There is an obvious need to adequately train and supervise jail and medical staff to alleviate the plainly obvious consequence of Eighth and Fourteenth Amendment violations.

75.  The failure to train employees and/or agents in the timely and adequate provision

of medical care set into motion the series of events that resulted in Mr. Hatfield's death and deprivation of his Constitutional rights. The failure to provide oversight, supervision, and discipline for offending conduct is also affirmatively linked to Mr. Hatfield's Constitutional injures and damages.

76.     BOCC via their final policymaker Regulado and/or Parker knew and/or should have known it was obvious that the maintenance of the aforementioned actions, inactions, and/or omissions would be substantially certain to result in the Constitutional violations such as those suffered by Mr. Hatfield. David L. Moss consciously chose to disregard these obvious risks.

77.     Poorly trained and improperly supervised jail and medical staff overseeing confined inmates present a known and obvious risk of abuse of power to the population of David L. Moss. BOCC via their final policymaker Regulado and/or Parker disregarded the known and obvious risks to citizens like Mr. Hatfield.

78.     Jail and medical staff acted in accordance with the above-mentioned official policies and/or widespread customs of the BOCC and Regulado and/or Parker, or as a result of the failure to be trained, supervised, and/or as a result of being improperly retained, and, in so doing, proximately caused the damages incurred by Mr. Hatfield.

79.     BOCC via their final policymaker Regulado and/or Parker enabled and allowed this unconstitutional injury through continued encouragement, ratification, and approval od the aforementioned policies, practices, and/or customs and lack of training and supervisions, in spite of the known inadequacies and unlawfulness, were each, and collectively, deliberately indifferent to the valuable constitutional rights of individuals like Mr. Hatfield.

80.     As a direct and proximate result of BOCC via their final policymaker Regulado and/or Parker, Mr. Hatfield lost his life.

81.    As a result of the above, the Plaintiff, Deborah Logan, as Special Administrator of her beloved brother's estate, demands a judgement herein against BOCC and Regulado and/or Parker in his official capacity for compensatory damages in the amount of $500,000.00.

## Fourth Claim

### Negligence/wrongful death against Turn Key, Nurse John/Jane Doe III, Nurse John/Jane Doe IV[1]

82.    The Plaintiff re-alleges and incorporates by reference paragraphs 1 through 81, as through fully set forth herein.

83.    Mr. Hatfield's death was entirely preventable but for the negligent and/or reckless failures of the named Defendants experienced by Mr. Hatfield while at David L. Moss.

84.    The named Defendants owed a duty to Mr. Hatfield, and all other inmates in custody at David L. Moss, to use reasonable care to provide inmates in need of medical attention with appropriate assessment, evaluation, treatment, and supervision.

85.    Defendants breached that duty by failing to provide Mr. Hatfield with prompt and adequate medical assessment, evaluation, treatment and supervision despite the obvious need.

86.    Defendants' breaches of their duty of care include, *inter alia*, the failure to: provide an adequate or timely health evaluation, provide proper classification and segregation of Mr. Hatfield and his immediate and emergent medical needs; provide timely or adequate health and/or medical treatment; provide adequate monitoring or supervision; and failure to prevent Mr. Hatfield

---

[1] Plaintiff's tort claims are properly brought against Turn Key and Nurses John/Jane Doe III & IV, and their employees and agents. The Oklahoma Supreme Court held in *Sullins v. American Medical Response of Oklahoma, Inc.*, 23 P.3d 259, 264 (Okla.2001), that a privately held entity such as Turn Key, is not an "entity designated to act in behalf of the State or Political subdivision" for the purposes of exemption under 51 O.S. § 152(2), merely because it contracts with a political subdivision to provide services which the political subdivision is authorized to provide, *See also Arnold v. Cornell Companies, Inc.* 2008.

from being harmed.

87.     As a direct and proximate cause of the Defendants' negligence, Mr. Hatfield experienced mental and physical pain, severe emotional distress, mental anguish, loss of his life and the damages alleged herein.

88.     As a direct and proximate cause of the Defendants' negligence, Mr. Hatfield's heirs have suffered damages in excess of $75,000.00, including, but not limited to, pecuniary loss (including lost wages), loss of consortium, grief, loss of companionship, and pain and suffering in violation of 12 O.S. § 1053.

**WHEREFORE**, based on the above and foregoing, Deborah Logan, as Special Administrator of the Estate of Darius Hatfield, prays for a judgment in excess of $725,000.00 against these Defendants for actual, compensatory, and all applicable categories of damages, reasonable attorney's fees, costs of this action, and for all other relief allowable under law.

Dated: June 2, 2020

Respectfully Submitted,

G. Gene Thompson, Esq. OBA # 31243
Margaret Cook, Esq. OBA # 31357
Keri D. Palacios, Esq. OBA #34175
Creek County Law PLLC
101 E. Lee Avenue Sapulpa, OK 74066
Tel: 918-223-3044
gene@creekcountylaw.com

~and~

Andrew M. Casey, Esq. OBA # 32371
Foshee & Yaffe
12231 S. May Ave.
OKC, OK 73170
Tel: 405-378-3033
andrewcasey.at.law @ gmail.com
**ATTORNEYS FOR PLAINTIFF**