# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHER DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) DEBORAH LOGAN, administrator of the Estate of DARIUS HATFIELD, deceased | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 20-CV-303-GKF-FHM |
| (1) TURN KEY HEALTH CLINICS, LLC d/b/a TURN KEY MEDICAL, and TURN KEY, et. Al. | ) ) ) ) | |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSE TO DEEFENDANT TURNKEY'S
## MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT
## [DOC. NO. 15]

**COMES NOW** THE PLAINTIFF, Deborah Logan, the duly appointed and acting Special Administrator of the Estate of Darius Hatfield, by and through her attorneys of record, G. Gene Thompson, Esq., Margaret Cook, Esq., and Keri D. Palacios of CREEK COUNTY LAW, PLLC, and Andrew M. Casey, Esq. of FOSHEE AND YAFFE, and hereby provides the following in Response to Turn Key's Motion to Dismiss (Doc. No. 15). In support of this Motion to extend time to respond, the Plaintiff shows the Court as follows:

### STATEMENT OF FACTS

1.      On June 5, 2018, Darius Hatfield passed away at Hillcrest medical center after being found hanging from a bed sheet in his jail cell at the David L Moss jail in Tulsa County, OK. [Doc 1, ¶¶ 1, 29-31].

2.      Hatfield's suicide attempt predictably could have been avoided had staff for the jail, including the medical staff of this Defendant, Turn-Key, taken action upon any of the indicators that Hatfield was at risk for causing harm to himself. [Doc 1, ¶¶ 1, 3-5.] The staff, including Turn

Key's staff were clearly on notice that Hatfield's conduct and mental condition presented a serious, emergent, and immediate medical issue. [Doc 1, ¶¶ 1, 6-8]. In fact, staff witnessed Hatfield attempting to choke himself a mere thirty minutes before he successfully completed that task. [Doc 1, ¶¶ 7-8]. As alleged in the complaint, this condition—evidencing itself through severe and apparent depression, malaise, and mental deterioration—was obvious to those that witnessed him. [Doc 1, ¶¶ 28-29, 54-57].

3.      Nevertheless, Turn key chose not to place him on suicide watch, medical isolation, or in an environment that could safely manage and prevent self-harm. [Doc 1, ¶¶ 9-10]. Instead, Hatfield was left in his cell—unsupervised—and with sufficient tools such as blankets and sheets to finish killing himself. *Id.*

4.      Those actions and conduct were consistent with policies, practices, and customs of this jail—and specifically Turn-key—that deprived adequate and timely medical care to this decedent. [Doc 1, ¶¶ 10-11]. Those practices, customs, and policies caused the lack of response to Hatfield's acute medical and psychiatric crisis which resulted in his death. [Doc 1, ¶¶ 11].

5.      Defendant Turn-Key is an independent contractor tasked with providing healthcare at the jail and to individuals like Hatfield. [Doc 1, ¶¶ 16, 41-43, 51-55]. As part of that contract, Turn Key was responsible for implementing policies and procedures for medical treatment as well as assisting the training and development of those policies. [Id.].

6.      Under the United States Constitution, it is the job of this defendant to provide medical care to vulnerable detainees so that predictable tragedies such as this can be avoided. [Doc 1, ¶¶ 22-24].

7.      *Those allegations are sufficient to show a strong likelihood that Hatfield was having suicidal thoughts, ideations, and was at risk for the type of self-harm that could cause death*

*or permanent injury.* [Doc 1, ¶¶ 37-38].

8.　　　Numerous policies that this Defendant had control over were contributing if not overriding factors that led to this calamity. These policies, practices and customs include:

> a.　　　*The failure of each entity, or individual, to promulgate, implement, or enforce, adequate medical treatment, or supervision policies responsive to the serious medical needs of inmates like Mr. Hatfield;*
> b.　　　*Inadequate medical triage screening by law enforcement officers, or at David L. Moss, that fails to identify inmates with serious medical needs;*
> c.　　　*Severe limitation of the use of off-site medical service providers, even in emergent situations at David L. Moss.*
> d.　　　*Untimely medical examinations and treatment at David L. Moss;*
> e.　　　*Understaffing medical personnel at David L. Moss, underfunding of operations at David L. Moss, or under-training employees and/or officers on how to identify, assess, or react to emergent medical situations;*
> f.　　　*The failure to supervise, oversee, or otherwise require the mental health evaluations or suicide watch once an emergent suicide risk was determined;*
> g.　　　*The failure to do routine checks on inmates exhibiting suicidal behaviors and statements;*
> h.　　　*The persistent ignoring of suicidal statements and acts by inmates. [Doc 1, ¶¶ 41-43].*

## ARGUMENT AND AUTHORITIES

I.　　　**PLAINTIFF PRODUCED ENOUGH WELL-PLEADED FACTS TO SATISFY THE PLAUSIBILITY REQUIREMENT OF FED. R. CIV. P. 12(b)(6), TWOMBLY AND IQBAL.**

Motions to Dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6) test the sufficiency of a Plaintiff's pleadings. To succeed on such a motion to dismiss, the movant must establish that the complaint failed to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Towmbly,* 550 U.S. 554, 570 (2007)). In response to a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), the non-movant must merely nudge his "claims across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678.

In evaluating a 12(b)(6) motion, the court is to "accept as true all well-pleaded facts, as distinguished from conclusory allegations, and view those facts in the light most favorable to the nonmoving party." *Maher v. Durango Metals, Inc.,* 144 F.3d 1302, 1304 (10th Cir. 1998). The Tenth Circuit has concluded that the *Twombly/Iqbqal* standard is "a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do." *Burnett v. Mortgage Elec. Registration Sys., Inc.* 706 F.3d 1231, 1235-36 (10th Cir. 2013) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)). Under this standard, specific facts are not required; the pleading need "only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Id.* Based on this rationale, courts will only grant a 12(b)(6) motion to dismiss when the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct. *Iqbal*, 556 U.S. at 679. The issue before the court is not whether the plaintiff will prevail, but rather, "…whether the plaintiff is entitled to offer evidence to support her claims." *Ruiz v. McDonnell,* 299 F.3d 1173, 1181 (10th Cir. 2002).

Upon review, nothing cited in Defendant's motion suggests that any pleading insufficiencies necessitate dismissal with prejudice. As such, should the court find that Plaintiff's pleadings lacked sufficiency, the Court should liberally grant leave for Plaintiff to amend pleadings. "[L]eave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a); see also *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1131 (10th Cir. 1994); *Glenn*, 868 F.2d at 371. The liberal granting of motions for leave to amend reflects the basic policy that pleadings should enable a claim to be

heard on its merits. See *Foman*, 371 U.S. at 181–82, 83 S.Ct. 227; *Calderon v. Kansas Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1185–86 (10th Cir. 1999).

Defendant Turn Key faults plaintiff for not explicitly alleging a legal theory of liability for her § 1983 claim. However, plaintiff need not do so; the law merely requires her to plead facts sufficient to show her claim is plausible. *See Johnson v. City of Shelby, Miss.*, 135 S.Ct. 346, 347 (2014). In fact, the Tenth Circuit has suggested a plaintiff can state a claim without even citing § 1983. *See Pledger v. Russell*, 702 F. App'x 683, 684 (10th Cir. 2017) (unpublished) (citing J*ohnson*, 135 S.Ct. at 347 ("[N]o heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim.")).

Next, Turn Key argues plaintiff has not alleged a sufficient factual basis for imposing municipal liability. To establish municipal liability, the plaintiff must plausibly allege: "1) the existence of a municipal policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged." *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010). A municipal entity may be liable for actions of subordinate employees in conformance with preexisting official policies or customs, *see Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978), or for actions of an authority with final policymaking authority, *see Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–83 (1986) (plurality opinion). *See Simmons v. Uintah Health Care Special Dist.*, 506 F.3d 1281, 1284–85 (10th Cir. 2007) (discussing these two ways of showing municipal liability). Furthermore, the Tenth Circuit has noted that

> [a] municipal policy or custom may take the form of (1) a formal regulation or policy statement; (2) an informal custom amoun[ting] to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them-- of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train

or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson*, 627 F.3d at 788 (internal quotation marks omitted).

Here, plaintiff alleges Turn Key shared responsibility with the Jail for developing medical treatment policies and for training and supervising medical personnel. [Doc. No. 1, ¶ 9-11, 16, 21-24, 32-33]. In collaboration with the Jail, plaintiff claims Turn Key adopted policies and customs which: provided inadequate and untimely medical treatment to inmates; provided inadequate intake triage, limited offsite facilities for situation's like Hatfield's, ritually provided untimely examinations; under-staffed and under-trained medical staff; failed to properly supervise inmates; and failed to perform routine checks on inmates at risk for suicidal behaviors. [Doc. No. 1, ¶¶ 41-45]. Further, plaintiff claims it was apparent or known to Turn Key that these policies and customs posed an excessive risk to the health of the Jail's inmates, to which Turn Key was deliberately indifferent. [Id.]. Last, plaintiff alleges an affirmative link between these policies and practices and the deprivation of Mr. Foutch's constitutional rights. [Doc. No. 1 ¶ 46-48, 51-53].

These allegations are sufficient to state a § 1983 claim against Turn Key. Taken as true, the allegations plausibly assert that the conduct complained of was the policy or custom of Turn Key, and that a direct causal link exists between that policy or custom and the decedent's constitutional harm. *See Bryson*, 627 F.3d at 788; *see also Sanders v. Glanz*, 138 F. Supp. 3d 1248, 1253–56 (N.D. Okla. 2015); *Revilla v. Glanz*, 8 F. Supp. 3d 1336, 1339–42 (N.D. Okla. 2014).

Turn Key also argues plaintiff has insufficiently pled that Turn Key acted under color of state law. "To state a claim under [] § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Hall v. Witteman*, 584 F.3d 859, 864 (10th Cir. 2009) (quoting West *v. Atkins*, 487 U.S. 42, 48 (1988)). The Supreme Court has held that "a

physician employed by [a state] to provide medical services to state prison inmates[] acted under color of state law for purposes of § 1983 when undertaking his duties in treating [the plaintiff's] injury." *West*, 487 U.S. at 54. The Tenth Circuit has applied *West's* reasoning to conclude a medical director under contract with the state to provide patient care, supervision, and training acted under the color of state law. *See Nieto v. Kapoor*, 268 F.3d 1208, 1216 (10th Cir. 2001).

Here, plaintiff alleges Turn Key: contracted to provide some or all of the medical treatment to inmates at the Jail; shared responsibility with the Jail for developing medical treatment policies and for training and supervising medical personnel [Doc. No. 2, ¶¶ 16, 37, 41-42, 48-51, 57]; and was involved in and exerted control over the Jail's medical program [Doc. No. 2, ¶¶ 16, 37, 41-42, 48-51, 57]. Under *West*, plaintiff has plausibly alleged Turn Key acted under color of state law. 487 U.S. 42, 54 (1988); *see also Sanders*, 138 F. Supp. 3d at 1253–54 (holding, based on *West*, that a private entity contracted to provide medical services at a jail acted under color of state law). Therefore, the court should deny Turn Key's motion to dismiss plaintiff's claim under 42 U.S.C. § 1983.

II.     **THE BARRIOS/FOUTCH DECISION DOES NOT APPLY TO THIS FACT PATTERN. TURN KEY LACKS ANY IMMUNITY AND THE NON-PERSUASIVE DICTA OF THE BARRIOS/FOUTCH DECISION DOES NOT MANDATE A DISMISSAL.**

This Court issued a ruling in NDOK 18-cv-231 (*Burke v. Regalado*) and19-cv-318 (*Lee v. Turn Key*). In both those cases, decided by your honor, negligence claims identical to those presented by this plaintiff were dismissed with prejudice. That leaves this Plaintiff with the difficult task of changing this court's mind on an issue it has heard multiple times. As this court knows, the undersigned was integrally part of the first *Foutch/Barrios* decision that later spurred

these two decisions. If this court would indulge the undersigned, here represents my best attempt to humbly undo some of my failings spawned after the *Foutch/Barrios* decision:

1.    The Barrios decision was also the *Foutch* decision from NDOK-17-231-GKF. Turn Key was not involved at all in the Barrios case (an eastern district jail suicide case where no private medical provider existed). Turn-key's reference in the Barrios decision was simply a footnote around a much larger debate between Plaintiff and County Jail defendants about the extent of the application of the *Bosh* decision.

2.    Immunity did not apply to Turn Key in *Foutch.* There, plaintiff in *Foutch* did list Turn Key as an applicable defendant in a *Bosh* claim (listed as "all defendants"), *See Exhibit A*, Complaint, NDOK 17-cv-431*; however,* Turn Key did not raise the question of immunity nor contest the legal applicability of the *Bosh* decision instead simply citing to insufficient pleadings. *See Exhibit B,* Turn Key's Motion to dismiss, NDOK 17-cv-431, P. 14. To make matters more unclear, Turn-Key never so much as pleaded immunity in its answer to the complaint. *See Exhibit C,* Turn Key's Answer. Lack of pleading immunity meant the negligence claim *always* stayed in contention but did not require litigation about a *Bosh claim.*

3.    Thus, the Oklahoma Supreme Court in statement that "[b]oth the healthcare contractor and the jail argued  they were  immune…," [*See Exhibit D,* Oklahoma Supreme court Answer to Certified Question in *Foutch, Barrios, P. 4-5]*, was simply inaccurate. Turn-key at no point suggested they were immune in *Foutch*.

4.    The Oklahoma Supreme Court was not asked to answer a question about whether the GTCA applied to Turn Key or not. *See Exhibit D,* Oklahoma Supreme Court's answer to certified questions. Hence, the pivotal parts of Pages 4-5 (and footnote 5 specifically) are nothing

more than *dicta* without adequate basis. In footnote 5, the Oklahoma Supreme Court concedes as much and merely "assumes" for purposes of answering the questions certified to them.

5.     The Oklahoma Supreme Court's *dicta* on the issue is non-persuasive and contradicts numerous portions of the GTCA immunity provisions. There is no Oklahoma common law of governmental immunity. *Sullins v. Am. Med. Response of Oklahoma, Inc.*, 2001 OK 20, at ¶ 10. Statutory law does not permit judicial extension of immunity without explicit legislative authority. *Id.* The power to delegate immunity to a class of entities remains vested solely in the legislature and immunity may only be extended when unambiguous statutory text permits it. *Id.* Courts may not divine immunity from silence. *Id.* Further, protection from tort liability may not be derived from any unclear or doubtful enactment's language. *Id. (citing Gunn v. Consolidated Rural Water & Sewer*, 1992 OK 131, ¶ 7, 839 P.2d 1345, 1349; *Jarvis v. City of Stillwater*, 1983 OK 88, ¶ 8–10, 669 P.2d 1108, 1111). Unless the statute clearly & unequivocally provides Turn Key immunity, no court has the authority to grant him such protection including the Oklahoma Supreme Court.

51 O.S. § 152(7) defines "employee," generally, as "any person who is authorized to act in behalf of a political subdivision or the state whether that person is acting on a permanent or temporary basis, with or without being compensated or on a full-time or part-time basis." Additionally, the statute provides specific examples of persons included in that definition:

> (1) all elected or appointed officers, members of governing bodies and other persons designated to act for an agency or political subdivision, ***but the term does not mean a person or other legal entity while acting in the capacity of an independent contractor or an employee of an independent contractor***,…

In *Sullins*, the Oklahoma Supreme Court determined that for OGTCA purposes, a "private entity" could not be an "agency" of a public trust merely because the private entity contracts with the public trust to provide services the public trust is authorized to provide. Specifically, the Court

concluded:

> a "private entity … does not act in the administration of government. It is not charged by law with the responsibility of conducting any public business. It is organized by private citizens pursuant to general corporate laws. It is not controlled by or answerable to the public, but is governed by its own board of directors. Its employees are not governmental employees. …. In summary, it possesses all the attributes of a private business enterprise, a non-governmental entity." *Sullins at* ¶¶ 19-20.

Additionally—and crucial here—Turn Key would be explicitly denied any status as "employees" due to the express statutory prohibition against considering "independent contractors" to be employees. *See* Doc. 1, ¶¶; *compare with Sullins,* 2001 OK 20, 23 P.3d 259, 268 ("the GTCA expressly excludes "independent contractors" or "an employee of independent contractors" from the definition of "employee," indicating the Legislature intended to exclude public contractors from the immunity provisions of the GTCA.")

The *Sullins* ruling controls this Court's decision. Expressions of doubtful meaning must be construed to promote harmony in the various provisions of a statute and give practical effect to the intention of the legislature if possible. *Board of Education of Burbank Independent School Dist. No. 20 v. Allen,* 1945 OK 18, 195 Okla. 209, 156 P.2d 596; *Sullins*, 2001 OK 20, 23 P.3d 259, 268.

Further, "private corporation," "private entity" and "operations contractor" are absent from the statutory definition of "agency." The legislature did not refer to private entities and that silent text cannot divine immunity nor be read to authorize immunity into doubtful and ambiguous legislative language. *Gunn*, 1992 OK 131, ¶ 7, 839 P.2d 1345, 1349; and *Jarvis*, 1983 OK 88, ¶ 10, 669 P.2d 1108, 1111; *Sullins at* ¶ 21.

It is well settled that for purposes of the OGTCA, a private entity does not become an "agency" and is not "designated to act in behalf of the state" merely because it contracts with a state agency to provide services the state agency is statutorily authorized to provide. *Briggs v. Oklahoma ex rel. Oklahoma Dep't of Human Servs.,* 472 F. Supp. 2d 1294, 1299 (W.D. Okla.

2007). In *Arnold v. Cornell Companies, Inc*., CIV-07-1431-F, 2008 WL 4816507, at *1–2 (W.D. Okla. Oct. 29, 2008), a private party was not party to a contract with the State and the existing contract identified the signing party to "be an independent contractor" while disavowing anyone from the private entity to be considered "agents or employees of the state." *Arnold v. Cornell Companies, Inc.*, CIV-07-1431-F, 2008 WL 4816507, at *1–2 (W.D. Okla. Oct. 29, 2008). In that case, the Western District Court denied the Defendant's *Motion for Summary Judgment* based upon no factual evidence supporting Defendant's claim for immunity. The logic of *Arnold* extends to this situation legally and factually.

Turn Key is plainly not an "employee" as that term is used in the GTCA. The dicta from the Barrios decision did not alter the legal landscape. Other Courts have found against Turn Key on this issue:

> "In Barrios, however, the Oklahoma Supreme Court did not find that a healthcare contractor at a jail was an employee entitled to tort immunity under the OGTCA but simply assumed the healthcare contractor was an employee for purposes of answering the certified questions before it."

*Graham v. Garfield County Criminal Justice Auth*., Case No. CIV-17-634-SLP (W.D. Okla., March 7, 2019) (unpublished) (attached hereto as Ex. E) at 3-5. "Additionally, the general finding the court made in [Barrios] specifically referred to the staff of a healthcare contractor, rather than the contractor itself." Id.

At the same time, § 152(7)(b)(7) of the GTCA does include "licensed medical professionals under contract with city, county, or state entities who provide medical care to inmates or detainees in the custody or control of law enforcement agencies" within the definition of "employee." Fundamentally, Turn Key cannot be construed as a "licensed health care professional[]". In another statutory context, the Oklahoma Legislature has defined "licensed health care professional" as "a physician and surgeon, podiatrist, osteopath, osteopathic physician and surgeon, physician

assistant, nurse, dentist, or pharmacist." See 63 Okla. Stat. § 3141.2(1). This is a common sense definition. As an amorphous corporate entity, Turn Key cannot be licensed to perform brain surgery, give a root canal or prescribe antibiotics. Only individuals with the requisite education and training may be "licensed health care professionals". Plainly, Turn Key is not an "employee" as defined by the GTCA and may be held vicariously liable for the tortious conduct of its employees.

Prior to *Foutch*, lower courts, including this Court, refused to grant private medical contractors "employee" immunity at the initial pleadings stage. For instance, this Court in *Revilla v. Glanz*, 8 F. Supp. 3d 1336, 1344-45 (N.D. Okla. 2014), addressed the issue when ruling on Correctional Healthcare Companies, Inc.'s ("CHC") motion to dismiss filed in that case. There, this Court found that "without complete factual information and in the absence of any legal authority that dictates the application of § 152(7)(b)(7) to the individual Healthcare Defendants (or to CHC) …, it is premature to determine whether § 152(7)(b)(7) covers CHC's employees and/or CHC." Id. at 1345.

This Court should only decide this issue at summary judgment stage after all presentation of evidence surrounding Turn-Key's status has been presented. *See Graham v. Garfield County Criminal Justice Auth.*, Case No. CIV-17-634-SLP (W.D. Okla., March 7, 2019) (unpublished) (attached hereto as Ex. 1 at 3-5. Similarly, as recently observed by the United States District Court for the Eastern District of Oklahoma:

> [Turn Key] also seeks dismissal under the Act based on statutory immunity. This court finds the situation roughly similar to Revilla v. Glanz, 8 F.Supp.3d 1336, 1345 (N.D.Okla.2014), in which the court concluded that "without complete factual information and in the absence of any legal authority" it was premature to determine the question. Authority now exists in the form of the opinion in Prince v. Turn Key Health Clinics, LLC, 2019 WL 238153 (N.D.Okla.2019), in which the court held as a matter of law on a motion to dismiss that Turn Key is an "employee" under the Act and therefore immune from tort

liability. Id. at 9. That holding is based on an implication, not an express statement, by the Oklahoma Supreme Court. This court still prefers the factual development available with a motion for summary judgment (and perhaps the development of controlling authority). The motion will be denied on this ground.

*Buchanan v. Turn Key Health Clinics LLC*, et al., Case No. CIV-18-171-RAW (E.D. Okla., Feb. 27, 2019) (unpublished) (attached hereto as Exhibit F - from NDOK 19-cv-318, Doc. 30m, Exhibit 2) at 5.

### III.    COMPLIANCE WITH THE GTCA IS NOT NECESSARY FOR AN INDEPENDENT CONTRACTOR MEDICAL PROVIDER.

The issue is whether Title 57 Oklahoma Statutes § 566.4 requires GTCA compliant notice upon a private healthcare provider. Plaintiff insists it does not. Nowhere in the text of the statute does notice apply to a private healthcare provider serving a jail environment. At most the statute immunizes "private correctional companies" (a vague undefined term plainly alluding to a private prison) or "agents" and employees which Turn Key is not (pending resolution of subsection II above). The pertinent text of the statute reads as follows:

> 2. No tort action or civil claim may be filed against any employee, agent, or servant of the state, the Department of Corrections, private correctional company, or any county jail or any city jail alleging acts related to the duties of the employee, agent or servant, until all of the notice provisions of the Governmental Tort Claims Act have been fully complied with by                                                 the                                                 claimant.

Okla. Stat. Ann. tit. 57, § 566.4 (West).

Plaintiff has plead that Defendant Turnkey merely exists as an independent contractor and not any agent or employee. The statute, and cases like *Hall v. GEO Group, Inc.,* are about private prisons; those cases are not about private independent contractors serving those prisons. To read otherwise would assume that the legislature intended to indemnify and immunize every type of independent contractor ranging from healthcare to food service to telecommunications at the jails.

Plaintiff reasserts all arguments from subpart above as an indictment of this argument. Unless Defendant proves they are an agent or employee (which they are not) then they are not provided the benefit of immunity and/or GTCA notice compliance. The silence in that text as relates to anything other than a private prison group cannot divine immunity nor be read to authorize immunity into doubtful and ambiguous legislative language. *Gunn v. Consolidated Rural Water & Sewer*, 1992 OK 131, ¶ 7, 839 P.2d 1345, 1349; and *Jarvis v. City of Stillwater*, 1983 OK 88, ¶ 10, 669 P.2d 1108, 1111; *Sullins v. Am. Med. Response of Oklahoma, Inc.*, 2001 OK 20, ¶ 21, 23 P.3d 259, 264. *Briggs v. Oklahoma ex rel. Oklahoma Dep't of Human Servs.,* 472 F. Supp. 2d 1294, 1299 (W.D. Okla. 2007); *Arnold v. Cornell Companies, Inc.*, CIV-07-1431-F, 2008 WL 4816507, at *1–2 (W.D. Okla. Oct. 29, 2008); *Bushert v. Hughes*, 1996 OK 21, 912 P.2d 334, 339; *New Orleans v. Sanford*, 69 So. 35, 41, 137 La. 628; *Sullins v. Am. Med. Response of Oklahoma, Inc.*, 2001 OK 20, 23 P.3d 259, 268) ((Delegata potestas non potest delegari—one to whom authority stands delegated by law may not, without specific empowerment, redelegate it to another).

  **WHEREFORE**, premises considered, Plaintiff respectfully requests that the Court deny Defendant Turn-Key's Motion. In the alternative, Plaintiff requests either leave to amend or to certify question as to whether immunity applies to turn-key.

       Date: 08/13/2020

       Respectfully Submitted,

       /s/Andrew M Casey_____
       Andrew M. Casey, OBA No. 32371
       Foshee & Yaffe
       12231 S. May Ave.
       Oklahoma City, OK 73170
       Phone: (405) 378-3033
       ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE FORM FOR ELECTRONIC FILINGS

I hereby certify that on __08/13/2020_____, I electronically filed the foregoing document with the United States District Court for the Northern District of Oklahoma by using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system:

Joel L. Wohlgemuth, OBA #9811
Jo Lynn Jeter, OBA #20252
Barrett L. Powers, OBA #32485
NORMAN WOHLGEMUTH CHANDLER JETER BARNETT & RAY
2900 Mid-Continent Tower
401 S. Boston Ave. Tulsa, OK 74103
ATTORNEYS FOR DEFENDANT, TURN KEY HEALTH CLINICS, LLC


/s/ Andrew M. Casey_____
Andrew M. Casey, Attorney for Plaintiff