**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| DEBORAH LOGAN, special administrator of the estate of DARIUS HATFIELD,   )<br>)<br>) | |
| Plaintiff,   )<br>) | |
| v.   )<br>) | Case No. 20-cv-00303-GKF-FHM |
| VIC REGALADO, in his official capacity as TULSA COUNTY SHERIFF, and Individually, *et al.*,   )<br>)<br>)<br>) | |
| Defendants.   ) | |

**DEFENDANT BOARD OF COUNTY COMMISSIONERS OF TULSA COUNTY'S
MOTION TO DISMISS IMPROPER PARTY AND BRIEF IN SUUPORT**

Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 21, Defendant Board of County Commissioners of Tulsa County ("BOCC"), hereby moves this Court for an order dismissing the BOCC from this action. The Tulsa County Sheriff is responsible for providing medical care at David L. Moss Criminal Justice Center ("DLM"), not the BOCC. Therefore, the BOCC respectfully requests that it be dismissed as an improper party. In support of its motion, the BOCC submits the following brief:

**ALLEGATIONS IN THE PETITION**

On May 31, 2018, Tulsa County Sheriff's deputies responded to an emergency call involving an accidental discharge of a fireman, which killed a woman. Doc. 2-1, at ¶¶ 26-27. After they arrived, deputies took Darius Hatfield ("Hatfield") into custody and transported him to DLM. *Id.* at ¶ 27. "On information and belief, Hatfield displayed many indications of depression, despair, and general malaise throughout the booking and intake process." *Id.* at ¶ 4. "On information and belief," after he was booked into DLM, Hatfield continued to exhibit both depressive and suicidal

1

thoughts and ideations that were communicated to jail and medical staff. *Id.* at ¶ 5. On June 3, 2018, a jailer observed Hatfield in his cell attempting to choke himself. *Id* at ¶ 6. The jailer allegedly walked away without intervening. *Id.* The jailer returned to Hatfield's cell thirty (30) or more minutes later to find that Hatfield had hung himself. *Id.* at ¶ 7. "Although extraordinary efforts were made to resuscitate Mr. Hatfield," he eventually died at Hillcrest Medical Center on June 5, 2018. *Id.* at ¶¶ 34-35.

Plaintiff asserts a § 1983 municipal liability claim[1] against the BOCC for deliberate indifference to Hatfield's medical needs under the Fourteenth Amendment. *See Id.* at ¶¶ 37-51, 69-80.[2] Plaintiff complains that the BOCC knew that Hatfield had serious and emergent medical and psychological issues "but callously disregarded the known and obvious risks to Mr. Hatfield's health and safety." *Id.* at ¶¶ 37-38. The BOCC allegedly failed to provide adequate or timely medical evaluations and treatment to Hatfield while he was detained at DLM. *Id.* at ¶ 39. Plaintiff further asserts that the BOCC enacted a policy or custom that encouraged employees not to provide treatment or protections to inmates that exhibited suicidal thoughts or ideations, and was responsible for a number a number of other deficient policies, practices, or customs at the jail. *Id*. at ¶¶ 24, 42.

Plaintiff specifically complains that the BOCC "via their final policymaker Regulado (sic) and/or Parker" is responsible for adequately training and supervising "all jail and medical staff . .

---

[1] To the extent that the Petition could be read to include a claim against the board members individually, the claims should be dismissed as there are no facts showing any board member's personal involvement in the alleged wrongdoing. *See Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013).

[2] Although Plaintiff captioned her first claim as "Cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments, "[t]he constitutional protection against deliberate indifference to a pretrial detainee's serious medical condition springs from the Fourteenth Amendment's Due Process Clause." *Burke v. Regalado*, 935 F.3d 960, 991 (10th Cir. 2019).

. ." *Id*. at ¶ 74. However, Plaintiff alleges "Regulado (sic) and/or Parker" failed to ensure DLM staff and medical personnel were adequately trained or supervised. *Id.*

## STANDARD OF REVIEW

The applicable legal standard for analyzing the sufficiency of a complaint was reiterated by the Supreme Court of the United States in *Ashcroft v. Iqbal*, 556 U.S. 662, 678-84 (2009). "Two working principles underlie our decision in *Twombly*.[3] First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly,* 550 U.S. at 555). "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (parentheses omitted). Each defendant is entitled to fair notice of each claim asserted and the factual basis for such claim. *See Robbins v. Okla.,* 519 F.3d 1242, 1248 (10th Cir. 2008). "The burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief." *Id*. at 1247.

Next, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly,* 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. (citing *Iqbal v. Hasty*, 490 F.3d 143, 157-158 (2nd Cir. 2007)). If the allegations "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[] 'ha[s] not nudged his claim[] across the line from conceivable to plausible.'" *Robbins,* 519 F.3d at 1247 (quoting *Twombly*, 550 U. S.

---

[3] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

at 570). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id*.

## I.
## THE BOCC SHOULD BE DROPPED AS A PARTY DEFENDANT[4]

A county may not be sued twice for the same offense.[5] The BOCC, in its official capacity, should be dropped as a party defendant, as Plaintiff has already brought suit against the County by suing Sheriff Vic Regalado in his official capacity. Oklahoma statute 19 O.S. § 4[6] was recently amended to provide that "[s]uit may be brought against a county by naming a county officer identified in Section 161 of this title when it is alleged that such officer in his or her official capacity is directly or vicariously liable to plaintiff in an action not arising out of contract." The statute also provides that a court may substitute a county officer listed in 19 O.S. § 161 in his or her official capacity for the BOCC when the county officer is better suited to defend the county

---

[4] Although "[m]isjoinder of parties is not a ground for dismissing an action[, o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed.R.Civ.P. 21.

[5] *See, e.g., E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 297, 122 S.Ct. 754, 766, 151 L.Ed.2d 755 (2002) ("it goes without saying that the courts can and should preclude double recovery by an individual"); *Sims v. Jefferson Downs Racing Assoc., Inc.*, 778 F.2d 1068, 1081 (5th Cir. 1985) ("outside of an action against an officer personally, a plaintiff does not have an action against both the corporation and its officer in an official capacity"); and *Kruchowski v. Weyerhaeuser Co.*, 2008 OK 105, ¶ 33, 202 P.3d 144, 153 ("Oklahoma law allows only one recovery to make a plaintiff whole").

[6] In all suits or proceedings by or against a county, the name in which a county shall sue or be sued shall be, "Board of County Commissioners of the County of _____," but this provision shall not prevent county officers, where authorized by law, from suing in their official name for the benefit of the county. ***Suit may be brought against a county by naming a county officer identified in Section 161 of this title when it is alleged that such officer in his or her official capacity is directly or vicariously liable to plaintiff in an action not arising out of contract***. Otherwise, suit may be brought against a county by naming the Board of County Commissioners of the County of _____; ***in actions against the Board not arising out of contract, upon motion, the Court may substitute a county officer identified in Section 161 of this title in his or her official capacity for the Board upon a showing that such county officer is better suited to represent and defend the county under the particular facts of the case***. 19 O.S. § 4 (emphasis added).

4

under the facts alleged. 19 O.S. § 4. "[C]ounty officer" means "the county clerk, county commissioner, county assessor, district court clerk, county treasurer and county sheriff." 19 O.S. § 161.

The Tulsa County Sheriff's Office is the only county office that exercises control over the Tulsa County Jail. The county sheriff is an independently elected official, 19 O.S. § 131, duty-bound together with his undersheriff and deputies to preserve the public peace, 19 O.S. § 516, having the charge and custody of the jail of his county, 19 O.S. 513, responsible for training the jailers who work at the jail of his county, 19 O.S. § 513.1, and responsible for the official acts of his undersheriff, deputies, and detention officers. 19 O.S. § 547. It is also "the duty of the sheriff of each county to provide bed clothing, washing, board and medical care when required, and all necessities for the comfort and welfare of prisoners." 57 O.S. § 52.

To the extent that Plaintiff has sued the BOCC as "the County" under 19 O.S. § 4, she has already filed suit against "the County" by filing suit against the Sheriff in his official capacity. The Sheriff in his official capacity represents the County and his representation of the County is complete. *See, e.g., Palmer v. Bd. of Cty. Comm'rs of Sequoyah Cty.,* No. CIV-07-012-RAW, 2007 WL 3407057 (E.D. Okla. Nov. 9, 2007) (dismissing board of county commissioners from § 1983 action and leaving sheriff in his official capacity as proper defendant); *Birdwell v. Glanz*, No. 15-CV-304-TCK-FHM, 2016 WL 2726929, at *8 (N.D. Okla. May 6, 2016) (In dismissing plaintiff's § 1983 claims against the Board, Court concluded that "because [the Sheriff] sets Jail policies, Glanz is the more appropriate official to sue in a representative capacity for the county, rather than [the] BOCC."); *Wirtz v. Regalado*, No. 18-CV-0599-GKF-FHM, 2020 WL 1016445, at *6 (N.D. Okla. Mar. 2, 2020) (dismissing the BOCC as a redundant party because "Sheriff Regalado is the more appropriate defendant as to those claims because he is the Tulsa County official responsible

for promulgating and enforcing policies for the DLMCJC, providing medical care to inmates and detainees, and operating the jail on a daily basis.").

Additionally, the United States District Court for the Western District of Oklahoma recently applied the amendments to 19 O.S. § 4 and found that:

> After [19 O.S. § 4's] revision, it is clear that actions for alleged failure to properly manage a jail and/or jail staff should be brought against the sheriff of the county rather than the board. Plaintiff's claims against Sheriff Tidwell in his official capacity and those against Defendant Board are duplicative. Defendant Board's request for dismissal will be granted on this issue.

*Bowens v. Bd. of Cty. Commissioners of Custer Cty., Oklahoma*, No. CIV-19-314-C, 2020 WL 2892670, at *2 (W.D. Okla. June 2, 2020).

Plaintiff misstates the law when she alleges that the BOCC was responsible for providing medical services to inmates at DLM, implementing medical care policies, and training and supervising employees with regard to those policies. Doc. 2-1, at ¶ 14. Plaintiff also misstates the law when she alleges that the BOCC is responsible for overseeing the care given by the jail's medical provider, Defendant Turn Key. *Id.*

"Under Oklahoma law, the county sheriff is the final policymaker as to the county jail." *Snow v. Bd. of Cty. Comm'rs of the Cty. of McClain*, No. CIV-14-911-HE, 2014 WL 7335319, at *2 (W.D. Okla. Dec. 19, 2014) (citing 19 O.S. § 513).[7] "The sheriff, and not the board [of county commissioners], is responsible for medical care in [a county jail in] Oklahoma." *Estate of Crowell ex rel. Boen v. Board of County Com'rs of County of Cleveland*, 2010 OK 5, ¶ 23, 237 P.3d 134, 142; *see also State ex rel. Dept. of Human Services v. Board of County Com'rs of McClain County*, 1992 OK 29, ¶ 5, 829 P.2d 961, 962 ("[57 O.S. § 52] places upon the county sheriff the duty to

---

[7] "The sheriff shall have the charge and custody of the jail of his county, and all the prisoners in the same, and shall keep such jail himself, or by his deputy or jailer, for whose acts he and his sureties shall be liable." 19 O.S. § 513.

provide medical care to any prisoners of the county who are in need of it, regardless of how the need arises"); *see also* 2007 OK AG 35, ¶ 1 ("[T]he Oklahoma Legislature charged the county sheriff with the responsibility to maintain the county jail pursuant to 19 O.S. 2001, § 513 …"). As in *Nelson v. Glanz,* No. 11-CV-189-CVE-PJC, 2011 WL 2144660, at *5 (N.D. Okla. May 31, 2011), the Plaintiff in this case "has no basis to proceed with a § 1983 claim against the Board because, as a matter of law, the Board is not a final policymaker for the Sheriff's Office and it cannot be held liable to plaintiff under § 1983 for the acts of employees of the Sheriff's Office." *See also Jantzen v. Bd. of County Comm'rs of Canadian County*, 188 F.3d 1247, 1259 (10th Cir. 1999) (dismissing the board of county commissioners from § 1983 action because the board may not be held liable for the actions of the county sheriff, in his official capacity).

The non-conclusory factual allegations contained in the Petition provide that a jailer observed Hatfield attempting to harm himself but walked away and left Hatfield alone for thirty (30) minutes. Doc. 2-1, at ¶¶ 29-30.[8] However, the BOCC has no legal duty to observe inmates, ensure that individual inmates receive medical treatment, or train or supervise those individuals who actually provide medical services to inmates. *See Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988) ("Under Oklahoma law, the Board has no statutory duty to hire, train, supervise, or discipline the county sheriffs or their deputies."); *duBois v. Bd. of Cty. Comm'rs of Mayes Cty., Oklahoma*, No. 12-CV-677-JED-PJC, 2014 WL 4810332, at *9 (N.D. Okla. Sept. 29, 2014) ("Whether a particular official has final policymaking authority for purposes of § 1983 is a question of state law. Under Oklahoma law, a county sheriff is the final policymaker with regard

---

[8] The BOCC hereby adopts and incorporates Defendant Turn Key's argument that Plaintiff failed to state a claim for municipal liability under § 1983. Doc. 15, at 11-18. Plaintiff neither pled any policy, practice, or custom of the BOCC, nor did she allege facts demonstrating that a BOCC policy, practice, or custom actually caused Hatfield harm.

to the county's jail . . . ."); *Estate of Crowell ex rel. Boen v. Board of County Com'rs of County of Cleveland*, 2010 OK 5, ¶ 23, 237 P.3d 134, 142 ("The sheriff, and not the board [of county commissioners], is responsible for medical care in [a county jail in] Oklahoma."). Accordingly, none of the policies or customs pled by Plaintiff are those of the BOCC as it does not have policy making authority at the jail. Therefore, the Petition is simply devoid of any factual assertions which would support Plaintiff's claim that a BOCC policy, practice, or custom actually caused Hatfield harm, and the BOCC should be dismissed.

## CONCLUSION

There is no liability that can be established against Tulsa County that is not derived through the Sheriff's alleged liability. Plaintiff's claim against the BOCC arises from alleged deficiencies at DLM, which is under the Sheriff's control. Plaintiff admitted that the BOCC's liability is "via their final policymaker Regulado (sic) and/or Parker." Doc. 2-1, at ¶ 74. The Sheriff is clearly better suited to defend Tulsa County under the facts alleged. Additionally, as the Sheriff is also a named defendant in this suit, the BOCC should be dismissed and terminated as an improper party defendant because the County may not be sued twice for the same offense.

Accordingly, in this suit against Sheriff Vic Regalado, in his official capacity, the BOCC is a redundant, unnecessary, and improper party defendant pursuant to 19 O.S. § 4.

Respectfully submitted,

/s/ Mike Shouse
Mike Shouse, OBA No. 33610
Tulsa County District Attorney's Office
500 S. Denver, Ste. 831
Tulsa, OK 74103
(918) 596-4825 | mshouse@tulsacounty.org
Attorney for Defendant Board of County
Commissioners of Tulsa County

9

## **CERTIFICATE OF ELECTRONIC NOTICE**

I hereby certify that on October 27, 2020, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants.

Andrew Michael-Don Casey
Magaret Cook
Jo Lynn Jeter
Barrett Lynn Powers
Gene Thompson
Douglas Wilson
Joel Wohlgemuth
Keri Palacios

                                                    /s/ Mike Shouse
                                                    Mike Shouse