IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

DEBORAH LOGAN, special administrator
of the Estate of DARIUS HATFIELD,
deceased,

      Plaintiff,

v.

VIC REGALADO, in his official capacity
as TULSA COUNTY SHERIFF, and
individually, *et al.*,

      Defendants.

Case No. 20-cv-303-GKF-FHM

**OPINION AND ORDER**

Before the court is the Motion to Dismiss [Doc. 37] filed by defendant Board of County Commissioners of Tulsa County. For the reasons set forth below, the motion is granted.

**I. Allegations of the Complaint[1]**

Deborah Logan, as Special Administrator of the Estate of Darius Hatfield, alleges the following facts relevant to the defendants' motions to dismiss.

On May 31, 2018, Darius Hatfield spent the day with friends and family grieving the death of his brother. [Doc. 2-1, p. 8 ¶ 25]. After spreading his brother's ashes near Tahlequah, Mr. Hatfield went to his girlfriend's home in Sand Springs, Oklahoma. [*Id.*]. At some point, Mr. Hatfield and his girlfriend were handling a firearm in the front yard when the firearm inadvertently discharged, killing Mr. Hatfield's girlfriend. [*Id.* ¶ 26]. Law enforcement was called to the scene and arrested Mr. Hatfield. [*Id.* ¶ 27].

---

[1] Logan originally filed a Petition in the District Court of Tulsa County, State of Oklahoma [*see* Doc. 2-1]. For consistency with the Federal Rules of Civil Procedure, the court refers to the Petition as the Complaint.

Mr. Hatfield exhibited substantial distress and grief both during the arrest and during transport to the David L. Moss Criminal Justice Center. [*Id.*]. His mental state continued to deteriorate during the booking and intake process. [*Id.*]. Mr. Hatfield's mental state had deteriorated to such a degree in the days following his arrest that he reached out to and was visited by a chaplain. [*Id.* p. 9 ¶ 28]. The chaplain, out of concern for Mr. Hatfield, reached out to Mr. Hatfield's family. [*Id.*]. Mr. Hatfield's depressed state and general malaise was evident to both jail staff and defendant Turn Key medical staff. [*Id.*]. However, instead of being placed on suicide watch, placed in medical isolation, and placed in an environment without access to instrumentalities of self-harm, Mr. Hatfield was left in his cell, unsupervised, with sheets/blankets and other instruments of self-harm readily available to him. [*Id.* p. 3 ¶ 9].

During the early morning hours of June 3, 2018, a jailer witnessed Mr. Hatfield attempt to choke himself. [*Id.* p. 9 ¶ 29]. Despite Mr. Hatfield's suicidal ideations and acts, the jailer left Mr. Hatfield alone in his jail cell, unmonitored, for approximately thirty (30) minutes. [*Id.* ¶¶ 29–30]. When jail staff returned to Mr. Hatfield's cell, they found him hanging lifeless from a noose made of a bedsheet. [*Id.* ¶ 31]. Mr. Hatfield was taken to Hillcrest Medical Center where he passed away two days later, on June 5, 2018. [*Id.* p. 10 ¶ 35].

Defendant Regalado is the current acting, and at all relevant times was, Sheriff of Tulsa County, Oklahoma. [*Id.* p. 4 ¶ 13]. "As Tulsa Sheriff, in his official capacity, [Regalado] is the final policymaker responsible for Tulsa County/Tulsa County Sheriff's Office ("TCSO") rules, regulations, policies, practices, procedures, and/or customs, including the policies, practices, procedures, and/or customs that violated Mr. Hatfield's rights . . . , and who was, in part, responsible for overseeing Mr. Hatfield's health and well-being, and assuring that Mr. Hatfield's medical needs were met." [*Id.* p. 5 ¶ 13]. Defendant Parker is the current acting, and at all relevant

times was, Jail Administrator of Tulsa County, Oklahoma. [*Id.* pp. 5–6 ¶ 15]. Logan alleges that if Regalado delegated his final policymaking authority to Parker, then Parker "is alternatively … the final policymaker responsible for Tulsa County [TCSO] rules, regulations, policies, practices, procedures, and/or customs, including the policies, practices, procedures, and/or customs that violated Mr. Hatfield's rights," and for overseeing Mr. Hatfield's health and well-being. [*Id.*]. Defendant Board of County Commissioners of Tulsa County ("BOCC") is a statutorily created governmental entity that is responsible for having a jail in Tulsa County and providing medical services to those in custody. [*Id.* p. 5 ¶ 14].

Regalado, Parker, and BOCC have had a policy, custom, or practice that created an environment with its employees that encouraged the failure to provide treatment or protections to inmates exhibiting suicidal thoughts, ideations, or symptoms. [*Id.* p. 8 ¶ 24]. Regalado, Parker, and BOCC "failed to provide adequate or timely medical evaluation, any assessment, or adequate medical monitoring and supervision or to otherwise care for Mr. Hatfield, while he was placed under their care, in deliberate indifference to Mr. Hatfield's serious medical needs, health, safety, and life." [*Id.*, p. 11 ¶ 39]. An affirmative link exists between these defendants' deliberate indifference "to Mr. Hatfield's serious medical needs, health, safety, and life," and "the policies, practices, and/or customs which [these defendants] each promulgated, created, implemented, and/or were responsible for maintaining," including:

- The failure to promulgate, implement, or enforce, adequate medical treatment, or supervision policies responsive to the serious medical needs of inmates like Mr. Hatfield;
- Inadequate medical triage screening at David L. Moss that fails to identify inmates with serious medical needs;
- Severe limitation of the use of off-site medical service providers, even in emergent situations at David L. Moss;
- Untimely medical examinations and treatment at David L. Moss;

- Understaffing medical personnel at David L. Moss, underfunding of operations at David L. Moss, or under-training employees and/or officers on how to identify, assess, or react to emergent medical situations;
- The failure to supervise, oversee, or otherwise require the mental health evaluations or suicide watch once an emergent suicide risk was determined;
- The failure to do routine checks on inmates exhibiting suicidal behaviors and statements; and
- The persistent ignoring of suicidal statements and acts by inmates.

[*Id.* pp. 11–12 ¶ 42]. These defendants knew and/or it was obvious that the maintenance of the aforementioned policies, practices, and/or customs posed an excessive risk to the health and safety of inmates like Mr. Hatfield. [*Id.* p. 12 ¶ 43]. As a direct and proximate result of the aforementioned policies, practices, and/or customs, Mr. Hatfield experienced severe physical pain, severe emotional distress, severe mental anguish, and loss of his life. [*Id.* ¶ 47].

Logan brought this action against Regalado, in his individual and official capacities; Parker, in his individual and official capacities; BOCC; Turn Key; Jailer John Doe I; Jailer John Doe II; Nurse Jane/John Doe III; and Nurse Jane/John Doe IV. [*Id.*]. Turn Key removed the action to this court on June 25, 2020. [Doc. 2]. Logan asserts two federal civil rights claims pursuant to 42 U.S.C. § 1983 against these the BOCC: (1) a First Claim for cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments against all defendants;[2] and (2) a Third Claim of Municipal Liability against BOCC, and Regalado and Parker in their official capacities.

---

[2] Though the First Claim is captioned "Cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments," Regalado and Parker argue that the claim on behalf of the estate of Mr. Hatfield, a pretrial detainee, flows from the Fourteenth Amendment's Due Process Clause, not the Eighth Amendment's prohibition on cruel and unusual punishment. [Doc. 35, pp. 4–5]. Logan does not challenge this re-characterization. *Burke v. Regalado*, 935 F.3d 960, 991 (10th Cir. 2019) ("The constitutional protection against deliberate indifference to a pretrial detainee's serious medical condition springs from the Fourteenth Amendment's Due Process Clause.").

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Cummings v. Dean*, 913 F.3d 1227, 1238 (10th Cir. 2019) (quoting *Emps.' Ret. Sys. of R.I. v. Williams Cos., Inc.*, 889 F.3d 1153, 1161 (10th Cir. 2018)). In making this assessment, the court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Waller v. City of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019) (quoting *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007)). "[M]ere labels and conclusions and a formulaic recitation of the elements of a cause of action will not suffice." *Id.* (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)). Accordingly, the court "will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Id.* (quoting *Khalik*, 671 F.3d at 1191). To state a plausible claim for relief under 42 U.S.C. § 1983, a plaintiff must allege facts demonstrating that (1) a "person" (2) acting under color of state law, (3) deprived the plaintiff of, or caused another to deprive the plaintiff of, (4) a right protected by the United States Constitution or other federal law. *Dodds v. Richardson*, 614 F.3d 1185, 1199-1200 (10th Cir. 2010); *Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002).

## III. Analysis

The BOCC argues it should be dismissed because its inclusion as a party is duplicative under Okla. Stat. tit. 19, § 4 given that Regalado and Parker are also sued in their official capacities as county officers. [Doc. 37]. Section 4 states that a "[s]uit may be brought against a county by naming a county officer identified in Section 161 of this title when it is alleged that such officer in his or her official capacity is directly or vicariously liable to plaintiff in an action not arising out

of contract." Okla. Stat. tit. 19, § 4. Section 161 states that "county officer" includes the "county sheriff." Okla. Stat. tit. 19, § 161. Logan "does not oppose Defendant [Tulsa] BOCC's request and motion to dismiss." [Doc. 40, p. 1 ¶ 1].

Judge Robin Cauthron, sitting in the Western District of Oklahoma, recently addressed this same issue:

> Finally, Defendant Board [of County Commissioners of Custer County ("Board")] argues it is not a proper party on Plaintiff's § 1983 claims. According to Defendant Board, the proper defendant for claims relating to inadequate supervision or training of jail staff is the sheriff. Defendant Board notes that Plaintiff has already named the sheriff, Defendant Tidwell, in this action. Thus, Defendant Board argues naming it as a Defendant is duplicative and entitles it to dismissal. In response, Plaintiff directs the Court to decisions from the Oklahoma Court of Civil Appeals noting the county board is a proper defendant for § 1983 claims arising from alleged improper actions by jail staff. As Defendant Board notes in its Reply, the Oklahoma Legislature recently changed 19 Okla. Stat. § 4. After that revision, it is clear that actions for alleged failure to properly manage a jail and/or jail staff should be brought against the sheriff of the county rather than the board. Plaintiff's claims against Sheriff Tidwell in his official capacity and those against Defendant Board are duplicative. Defendant Board's request for dismissal will be granted on this issue.

*Bowens v. Bd. of Cnty. Comm'rs*, No. CIV-19-314-C, 2020 WL 2892670, at *2 (W.D. Okla. June 2, 2020); *see also Wirtz v. Regalado*, No. 18-CV-0599-GKF-FHM, 2020 WL 1016445, at *6 (N.D. Okla. Mar. 2, 2020) ("[T]he Court agrees with the BOCC … that the official-capacity claims asserted against the BOCC should be dismissed as redundant.").

IT IS THEREFORE ORDERED that the Motion to Dismiss of the Board of County Commissioners of Tulsa [Doc. 37] is granted.

DATED this 2nd day of March, 2021.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE