IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DEBORAH LOGAN, special administrator of the Estate of DARIUS HATFIELD, deceased,<br><br>       Plaintiff,<br><br>v.<br><br>VIC REGALADO, in his official capacity as TULSA COUNTY SHERIFF, and individually, *et al.*,<br><br>       Defendants. | Case No. 20-cv-303-GKF-FHM |

**OPINION AND ORDER**

Before the court is the Motion to Dismiss [Doc. 35] filed by defendants Vic Regalado and David Parker. For the reasons set forth below, the motion is granted in part and denied in part.

**I. Allegations of the Complaint[1]**

Deborah Logan, as Special Administrator of the Estate of Darius Hatfield, alleges the following facts relevant to the defendants' motion to dismiss.

On May 31, 2018, Darius Hatfield spent the day with friends and family grieving the death of his brother. [Doc. 2-1, p. 8 ¶ 25]. After spreading his brother's ashes near Tahlequah, Mr. Hatfield went to his girlfriend's home in Sand Springs, Oklahoma. [*Id.*]. At some point, Mr. Hatfield and his girlfriend were handling a firearm in the front yard when the firearm inadvertently discharged, killing Mr. Hatfield's girlfriend. [*Id.* ¶ 26]. Law enforcement was called to the scene and arrested Mr. Hatfield. [*Id.* ¶ 27].

---

[1] Logan originally filed a Petition in the District Court of Tulsa County, State of Oklahoma [*see* Doc. 2-1]. For consistency with the Federal Rules of Civil Procedure, the court refers to the Petition as the Complaint.

Mr. Hatfield exhibited substantial distress and grief both during the arrest and during transport to the David L. Moss Criminal Justice Center. [*Id.*]. His mental state continued to deteriorate during the booking and intake process. [*Id.*]. Mr. Hatfield's mental state had deteriorated to such a degree in the days following his arrest that he reached out to and was visited by a chaplain. [*Id.* p. 9 ¶ 28]. The chaplain, out of concern for Mr. Hatfield, reached out to Mr. Hatfield's family. [*Id.*]. Mr. Hatfield's depressed state and general malaise was evident to both jail staff and defendant Turn Key medical staff. [*Id.*]. However, instead of being placed on suicide watch, placed in medical isolation, and placed in an environment without access to instrumentalities of self-harm, Mr. Hatfield was left in his cell, unsupervised, with sheets/blankets and other instruments of self-harm readily available to him. [*Id.* p. 3 ¶ 9].

During the early morning hours of June 3, 2018, a jailer witnessed Mr. Hatfield attempt to choke himself. [*Id.* p. 9 ¶ 29]. Despite Mr. Hatfield's suicidal ideations and acts, the jailer left Mr. Hatfield alone in his jail cell, unmonitored, for approximately thirty (30) minutes. [*Id.* ¶¶ 29–30]. When jail staff returned to Mr. Hatfield's cell, they found him hanging lifeless from a noose made of a bedsheet. [*Id.* ¶ 31]. Mr. Hatfield was taken to Hillcrest Medical Center where he passed away two days later, on June 5, 2018. [*Id.* p. 10 ¶ 35].

Defendant Regalado is the current acting, and at all relevant times was, Sheriff of Tulsa County, Oklahoma. [*Id.* p. 4 ¶ 13]. "As Tulsa Sheriff, in his official capacity, [Regalado] is the final policymaker responsible for Tulsa County/Tulsa County Sheriff's Office ("TCSO") rules, regulations, policies, practices, procedures, and/or customs, including the policies, practices, procedures, and/or customs that violated Mr. Hatfield's rights . . . , and who was, in part, responsible for overseeing Mr. Hatfield's health and well-being, and assuring that Mr. Hatfield's medical needs were met." [*Id.* p. 5 ¶ 13]. Defendant Parker is the current acting, and at all relevant times was, Jail Administrator of Tulsa County, Oklahoma. [*Id.* pp. 5–6 ¶ 15]. Logan alleges that

2

if Regalado delegated his final policymaking authority to Parker, then Parker "is alternatively … the final policymaker responsible for Tulsa County/TCSO rules, regulations, policies, practices, procedures, and/or customs, including the policies, practices, procedures, and/or customs that violated Mr. Hatfield's rights," and for overseeing Mr. Hatfield's health and well-being. [*Id.*]. Defendant Board of County Commissioners of Tulsa County ("BOCC") is a statutorily created governmental entity that is responsible for having a jail in Tulsa County and providing medical services to those in custody. [*Id.* p. 5 ¶ 14].

Regalado, Parker, and BOCC have had a policy, custom, or practice that created an environment with its employees that encouraged the failure to provide treatment or protections to inmates exhibiting suicidal thoughts, ideations, or symptoms. [*Id.* p. 8 ¶ 24]. Regalado, Parker, and BOCC "failed to provide adequate or timely medical evaluation, any assessment, or adequate medical monitoring and supervision or to otherwise care for Mr. Hatfield, while he was placed under their care, in deliberate indifference to Mr. Hatfield's serious medical needs, health, safety, and life." [*Id.*, p. 11 ¶ 39]. An affirmative link exists between these defendants' deliberate indifference "to Mr. Hatfield's serious medical needs, health, safety, and life," and "the policies, practices, and/or customs which [these defendants] each promulgated, created, implemented, and/or were responsible for maintaining," including:

- The failure to promulgate, implement, or enforce, adequate medical treatment, or supervision policies responsive to the serious medical needs of inmates like Mr. Hatfield;
- Inadequate medical triage screening at David L. Moss that fails to identify inmates with serious medical needs;
- Severe limitation of the use of off-site medical service providers, even in emergent situations at David L. Moss;
- Untimely medical examinations and treatment at David L. Moss;
- Understaffing medical personnel at David L. Moss, underfunding of operations at David L. Moss, or under-training employees and/or officers on how to identify, assess, or react to emergent medical situations;

3

- The failure to supervise, oversee, or otherwise require the mental health evaluations or suicide watch once an emergent suicide risk was determined;
- The failure to do routine checks on inmates exhibiting suicidal behaviors and statements; and
- The persistent ignoring of suicidal statements and acts by inmates.

[*Id.* pp. 11–12 ¶ 42]. These defendants knew and/or it was obvious that the maintenance of the aforementioned policies, practices, and/or customs posed an excessive risk to the health and safety of inmates like Mr. Hatfield. [*Id.* p. 12 ¶ 43]. As a direct and proximate result of the aforementioned policies, practices, and/or customs, Mr. Hatfield experienced severe physical pain, severe emotional distress, severe mental anguish, and loss of his life. [*Id.* ¶ 47].

Logan brought this action against Regalado, in his individual and official capacities; Parker, in his individual and official capacities; BOCC; Turn Key; Jailer John Doe I; Jailer John Doe II; Nurse Jane/John Doe III; and Nurse Jane/John Doe IV. [*Id.*]. Turn Key removed the action to this court on June 25, 2020. [Doc. 2]. Logan asserts three federal civil rights claims pursuant to 42 U.S.C. § 1983 against Regalado and Parker: (1) a First Claim for cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments against all defendants;[2] (2) a Second Claim for Supervisory Liability against Regalado and Parker in their individual capacities; and; (3) a Third Claim for Municipal Liability against BOCC, and Regalado and Parker in their official capacities. Regalado and Parker move to dismiss the claims pursuant to Federal Rule of Civil Procedure 12(b)(6). [Doc. 35; Doc. 37].

---

[2] Though the First Claim is captioned "Cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments," Regalado and Parker argue that the claim on behalf of the estate of Mr. Hatfield, a pretrial detainee, flows from the Fourteenth Amendment's Due Process Clause, not the Eighth Amendment's prohibition on cruel and unusual punishment. [Doc. 35, pp. 4–5]. Logan does not challenge this re-characterization. *See Burke v. Regalado*, 935 F.3d 960, 991 (10th Cir. 2019) ("The constitutional protection against deliberate indifference to a pretrial detainee's serious medical condition springs from the Fourteenth Amendment's Due Process Clause.").

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Cummings v. Dean*, 913 F.3d 1227, 1238 (10th Cir. 2019) (quoting *Emps.' Ret. Sys. of R.I. v. Williams Cos., Inc.*, 889 F.3d 1153, 1161 (10th Cir. 2018)). In making this assessment, the court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Waller v. City of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019) (quoting *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007)). "[M]ere labels and conclusions and a formulaic recitation of the elements of a cause of action will not suffice." *Id.* (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)). Accordingly, the court "will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Id.* (quoting *Khalik*, 671 F.3d at 1191). To state a plausible claim for relief under 42 U.S.C. § 1983, a plaintiff must allege facts demonstrating that (1) a "person" (2) acting under color of state law, (3) deprived the plaintiff of, or caused another to deprive the plaintiff of, (4) a right protected by the United States Constitution or other federal law. *Dodds v. Richardson*, 614 F.3d 1185, 1199-1200 (10th Cir. 2010); *Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002).

## III. Analysis

As noted above, Regalado and Parker move to dismiss the three claims. The court considers their arguments in turn.

### A. The "Alternative" Theory against Jail Administrator Parker

Although Logan alleges that Sheriff Regalado is the "final policymaker" here, she "alternately" names Parker as the final policymaker "if such authority was delegated by Regalado." [Doc. 2-1, pp. 5–6 ¶ 15]. Logan explains that she pled in this way to prevent "a shell game [that]

often occurs in these types of litigation wherein a sheriff defers blame for actions at a jail onto a jail administrator who—by function—actually supervises and sets the policies for the jail." [Doc. 39, p. 8]. She argues that "[d]ismissing a jail administrator at [the] 12(b)(6) stage prematurely positions Defendant Regalado to shift all blame onto the jail administrator." [*Id.*]. Parker counters that although Logan is permitted to plead alternative theories, he must be dismissed from the case because Oklahoma statutory and case law is clear that the sheriff is the Tulsa County official charged with managing the jail. [Doc. 35, pp. 4–5; Doc. 43, pp. 2–3].

Oklahoma statutory law grants a sheriff "the charge and custody of the jail of his county, and all the prisoners in the same, and shall keep such jail himself, or by his deputy or jailer, for whose acts he and his sureties shall be liable." *See* Okla. Stat. tit. 19, §§ 513, 513.1; *see also* Okla. Stat. tit. 57, §§ 47, 52; *Estate of Crowell v. Board of Cnty. Comm'rs of Cleveland County*, 237 P.3d 134, 142 (Okla. 2010) ("Under Oklahoma law, the sheriff is the final policymaker for a county jail."). Though Logan speculates that Regalado *may have* delegated policymaking duties to Parker as the Jail Administrator, her fear of a "shell game" lacks legal merit since, in Oklahoma, the sheriff is the final policymaker for a county jail. Accordingly, defendant Parker's motion to dismiss him as a defendant from plaintiff's First and Third Claims is granted.

**B.     Plaintiff's Second Claim for Supervisory Liability against Regalado and Parker, Individually**

Regalado and Parker argue that Logan has failed to state a claim against them in their individual capacities. The Tenth Circuit recently outlined the standard for supervisory liability against an individual in another § 1983 case involving the Tulsa County Sheriff:

> Section 1983 does not authorize *respondeat superior* liability for a supervisor based solely on the actions of his subordinates. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "[T]he three elements required to establish a successful § 1983 claim against a defendant based on his or her supervisory responsibilities [are]: (1) personal involvement[,] (2) causation, and

6

> (3) state of mind." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013); *see also Dodds*, 614 F.3d 1199.
>
> Under the first element, the plaintiff "must show an 'affirmative link' between the supervisor and the constitutional violation." *Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014) (quotations omitted). The plaintiff can show such a link by establishing "the [supervisor] promulgated, created, implemented[,] or possessed responsibility for the continued operation of a policy," *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011), or "the establishment or utilization of an unconstitutional policy or custom," *Dodds*, 614 F.3d at 1199, provided the policy or custom resulted in a violation of the plaintiff's constitutional rights.
>
> "The second element requires the plaintiff to show that the defendant's alleged action(s) caused the constitutional violation by setting in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights." *Estate of Booker*, 745 F.3d at 435 (quotations omitted).
>
> As to the third element, "in the context of a Fourteenth Amendment claim" involving injuries to an inmate, a plaintiff can "establish the requisite state of mind by showing that [a supervisor] 'acted with deliberate indifference.'" *Perry v. Durborow*, 892 F.3d 1116, 1122 (10th Cir. 2018) (quotations omitted). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). "[A] local government policymaker is deliberately indifferent when he deliberately or consciously fails to act when presented with an obvious risk of constitutional harm which will almost inevitably result in constitutional injury of the type experienced by the plaintiff." *Hollingsworth v. Hill*, 110 F.3d 733, 745 (10th Cir. 1997) (quotations omitted).

*Burke v. Regalado*, 935 F.3d 960, 997–98 (10th Cir. 2019) (alterations in original). Regalado and Parker contend that Logan has failed to allege the third element—that they had the requisite *mens rea* of "deliberate indifference." The court agrees.

"[W]hen a pretrial detainee alleges deliberate indifference to serious medical needs," the court applies "the two-part Eighth Amendment inquiry." *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1028 (10th Cir. 2020) (citing *Martinez v. Beggs*, 563 F.3d 1082, 1088

7

(10th Cir. 2009)).³ "This exercise requires both an objective and a subjective inquiry." *Id.* Regalado and Parker do not argue that the objective inquiry is insufficiently pled. *See Martinez*, 563 F.3d at 1088 (finding that death is "without doubt[ ] sufficiently serious to meet the objective component"). Instead they argue that the subjective inquiry is insufficiently pled. The subjective inquiry "asks whether 'the defendants knew [the detainee] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it.'" *Quintana*, 973 F.3d at 1029 (alteration in original) (quoting *Martinez*, 563 F.3d at 1088). "[T]he Supreme Court has insisted upon actual knowledge: 'the official must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference*.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Logan's allegations, accepted as true, raise a reasonable inference that Jailers John Doe I & II knew about Mr. Hatfield's actions when he was brought to and housed in David L. Moss. But Logan fails to plausibly allege that Regalado and Parker acted with the same state of mind. Logan alleges that: (1) Mr. Hatfield was in custody and openly exhibited both depressive and suicidal thoughts and ideations that were communicated to the staff of David L. Moss; (2) that a Chaplain was informed about Mr. Hatfield's concerning mental state; (3) that the employees of both David L. Moss and the Tulsa County Sherriff's office "were clearly on notice of Mr. Hatfield's serious, emergent, and immediate medical issues"; (4) that "[d]espite having knowledge that Mr. Hatfield was at risk for committing suicide, and in fact was witnessed attempting to do so by jail staff, the Defendants herein were deliberately indifferent to Mr. Hatfield's rights, safety, and known and emergent medical needs," and; (5) "despite said knowledge the Defendants herein took no

---

³ As the Tenth Circuit stated in *Martinez*, pretrial detainees are entitled under the Fourteenth Amendment "to the degree of protection against denial of medical attention which applies to convicted inmates" under the Eighth Amendment. 563 F.3d at 1088 (quoting *Garcia v. Salt Lake County*, 768 F.2d 303, 307 (10th Cir. 1985)).

action to prevent, or contain, the risk that Mr. Hatfield would be successful in further attempts at suicide." [Doc. 2-1, pp. 2–3, 9 ¶¶ 5, 8, 32–33]. None of these allegations state that Parker or Regalado were informed of Mr. Hatfield's condition beyond simply stating that "staff" or "Defendants" knew of his condition. Nor do these allegations lead to reasonable inferences that Regalado or Parker either directed Jailers John Doe I & II to act in the manner that they did, or that Regalado or Parker acquiesced in the Jailers' decisions. *See Wirtz*, 2020 WL 1016445, at *11 (granting a motion to dismiss individual supervisory liability claims in a similar situation). Consequently, Logan fails to state a plausible claim against Regalado and Parker in their individual capacities, and Logan's Second Claim is dismissed.

**C.     Dismissal of Portions of Plaintiff's Claims Consistent with the Court's Prior Order**

Finally, Regalado and Parker argue that portions of plaintiff's claims should be dismissed without prejudice so as to be consistent with the court's Order of September 18, 2020 [Doc. 25]. Plaintiff Logan agrees that based on the prior ruling, a dismissal without prejudice of certain subsets of the claim should be granted. [Doc. 39, p. 12].

For the reasons explained in the court's prior Order [Doc. 25, pp. 10–11], Logan has failed to state plausible claims that: (1) a severe limitation on the use of off-site medical service providers, even in emergent situations, caused Mr. Hatfield's alleged constitutional violations [Doc. 2-1, p. 11, ¶ 42(c)]; and (2) a policy or practice of understaffing and underfunding caused Mr. Hatfield's constitutional injury [*Id*., p. 12, ¶ 42(e)]; and (3) that under-training employees and/or officers on how to identify, assess, or react to emergent medical situations caused the alleged constitutional violation [*Id*]. Insofar as the previous order addressed only allegations contained in plaintiff's First Claim for relief, and because the movants here rely on the previous order as the basis for their motion, the subparts dismissed here are limited to portions of the claims contained in the First Claim.

## IV. CONCLUSION

WHEREFORE, the Motion to Dismiss [Doc. 35] filed by defendants Vic Regalado and David Parker is granted in part and denied in part.

IT IS SO ORDERED this 3rd day of March, 2021.

*[signature]*
GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE