**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

DEBORAH LOGAN, as Special Administrator )
of the Estate of DARIUS HATFIELD, )
                                            )
        Plaintiff, )
                                            )     Case No. 20-cv-303-GKF-SH
v. )
                                            )
VIC REGALADO, in his official capacity )
as TULSA COUNTY SHERIFF, and )
                                            )
TURN KEY HEALTH CLINICS, LLC )
                                            )
        Defendants. )

---

**DEFENDANT TURN KEY HEALTH CLINICS, LLC'S
MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

---

Respectfully submitted,

**Joel L. Wohlgemuth**, OBA #9811
**Jo Lynn Jeter**, OBA #20252
**W. Caleb Jones,** OBA #33541
**NORMAN WOHLGEMUTH LLP**
3200 Mid-Continent Tower
401 S. Boston Ave.
Tulsa, OK 74103

**ATTORNEYS FOR DEFENDANT
TURN KEY HEALTH CLINICS, LLC**

**April 1, 2022**

TABLE OF CONTENTS

**INTRODUCTION**................................................................................................1

**PROCEDURAL BACKGROUND** ...................................................................1

**STATEMENT OF UNDISPUTED MATERIAL FACTS**.............................2

**ARGUMENT AND AUTHORITIES** ..............................................................6

    **I.**    **Applicable Legal Standards.** ...............................................................6

        A. Summary Judgment Standards.........................................................6

        B. Legal Standards governing Plaintiff's §1983 claim.........................7
        *i.*    *Standards governing deliberate indifference claims.* ................7
        *ii.*    *Standards governing municipal liability*.....................................9

    **II.**    **Turn Key is Entitled to Summary Judgment on Plaintiff's §1983 Claim.**.......11

        A. The record reveals that Turn Key staff appropriately evaluated and
           monitored Darius Hatfield. ...............................................................11
        *i.*    *Dr. Jawuan Lewis* ......................................................................12
        *ii.*    *LPN Jessica Mobley*..................................................................12
        *iii.*    *Nurse Rhonda Morrow* ............................................................13
        *iv.*    *CMA Maureen McAnally* .........................................................13
        *v.*    *John Fox, LPC* ..........................................................................14

        B. No employee of Turn Key, or Turn Key medical staff collectively,
           was deliberately indifferent to Darius Hatfield's medical needs,
           and therefore, there was no constitutional deprivation. ..............14

        C. Even if Plaintiff can show that Mr. Hatfield's death was caused by
           a constitutional deprivation, Plaintiff cannot show that such
           deprivation is attributable to a policy, practice, or custom of Turn
           Key.....................................................................................................17

**CONCLUSION** .................................................................................................17

**<u>EXHIBITS TO MOTION</u>**

Exhibit 1: Turn Key medical records for Darius Hatfield

Exhibit 2: Excerpt from deposition of Dr. Jawaun Lewis

Exhibit 3: Booking Sheet and Inmate Housing History

Exhibit 4: Medical Examiner's Report

Exhibit 5: Affidavit of Dr. William Cooper, Turn Key Corporate Representative, with Selected Turn Key Policies within Tulsa County Jail

Exhibit 6: 2017 NCCHC Audit Results

Exhibit 7: Affidavit of Kathryn J. Wild with Expert Witness Report of Kathryn J. Wild

Exhibit 8: Affidavit of Dr. Bruce J. Cohen, M.D. with Forensic Psychiatric Report of Dr. Bruce J. Cohen

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*Barrie v. Grand County, Utah,*
    119 F.3d 862 (10th Cir. 1997) ................................................................1, 7, 9

*Bond v. Regalado, et al.,*
    No. 18-CV-231-GKF (N.D. Okla. Aug. 27, 2021) ....................................11, 16

*Bryson v. City of Oklahoma City*
    627 F.3d 784 (10th Cir. 2010) ................................................................10, 17

*Burke v. Regalado,*
    935 F.3d 960 (1992)....................................................................................8

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)....................................................................................6

*Collins v. City of Harker Heights,*
    503 U.S. 115 (1992)....................................................................................9

*Cox v. Glanz,*
    800 F.3d 1231 (10th Cir. 2015) ................................................................9, 15

*Crowson v. Wash. Cty. State of Utah,*
    983 F.3d 1166 (10th Cir. 2020) ................................................9, 10, 11, 14, 16

*Dubbs v. Head Start, Inc.,*
    336 F.3d 1194 (10th Cir. 2003) ................................................................9, 10, 17

*Estelle v. Gamble,*
    429 U.S. 97 (1976)....................................................................................7, 8

*Farmer v. Brennan,*
    511 U.S. 825 (1994)....................................................................................8

*Garcia v. Salt Lake County,*
    768 F.2d 303 (10th Cir. 1985) ................................................................11, 16

*Gaston v. Ploeger*,
    229 F. Appx. 702 (10th Cir. 2007)............................................................1, 9, 15

*Lopez v. LeMaster,*
    172 F.3d 756 (10th Cir. 1999) ................................................................7

*Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986).............................................................................................6

*Mata v. Saiz,*
   427 F.3d 745 (10th Cir. 2005) ..........................................................................8

*Monell v. Dept. of Social Servs. of City of New York,*
   436 U.S. 658 (1978)..........................................................................9, 10, 15, 17

*Oklahoma City v. Tuttle,*
   471 U.S. 808 (1985)..........................................................................................10

*Pembaur v. City of Cincinnati,*
   475 U.S. 469 (1986)..........................................................................................10

*Randall v. Bd. of Cnty. Comm'rs,*
   184 Fed. Appx 723 (10th Cir. 2006) ..................................................................8

*Scott v. Harris,*
   550 U.S. 372 (2007)........................................................................................6, 7

*Weigel v. Broad,*
   544 F. 3d 1143 (10th Cir. 2008) ........................................................................6

*Whitley v. Alberts,*
   475 U.S. 312 (1986)............................................................................................8

## Constitutional Amendments

U.S. Const. amend. VIII..........................................................................................7, 8
U.S. Const. amend. XIV ............................................................................................7

## Statutes

42 U.S.C. § 1983...........................................................................................Passim

## Court Rules

10th Cir. R. 32.1.....................................................................................................8
Fed. R. Civ. P. 12(b)(6)...........................................................................................1
Fed. R. Civ. P. 56 ...............................................................................................1, 6

Pursuant to Fed. R. Civ. P. 56, Defendant, Turn Key Health Clinics, LLC ("Turn Key"), respectfully moves for summary judgment in its favor and against Plaintiff, Deborah Logan ("Plaintiff"), as Special Administrator of the Estate of Darius Hatfield ("Mr. Hatfield"). In support of this motion for summary judgment, Turn Key states as follows:

## INTRODUCTION

Mr. Hatfield was incarcerated in the Tulsa County Jail from May 31-June 3, 2018.  During this brief period of time, he was consistently evaluated and monitored by Turn Key medical and mental health staff. In fact, Dr. Jawaun Lewis, Turn Key's Psychiatrist, evaluated Mr. Hatfield immediately following his arrest, and specifically assessed whether Mr. Hatfield was at risk of committing suicide. Throughout the numerous evaluations by multiple Turn Key staff, Mr. Hatfield consistently denied having suicidal ideations or any other mental health symptoms. Under these facts, Plaintiff cannot show that Turn Key was deliberately indifferent to a known, "substantial risk of suicide" with respect to Mr. Hatfield. *Barrie v. Grand Cnty, Utah*, 119 F.3d 862, 869 (10th Cir. 1997); *see also*, *Gaston v. Ploeger*, 229 F. Appx. 702, 708 (10th Cir. 2007). Accordingly, Turn Key is entitled to summary judgment as a matter of law on Plaintiff's claim for constitutional deprivation under 42 U.S.C. §1983.

## PROCEDURAL BACKGROUND

Plaintiff brought this lawsuit on June 25, 2020 against Turn Key and several other Defendants. (Doc. No. 2). Turn Key filed a Rule 12(b)(6) dismissal motion for failure to state a claim. (Doc. No. 15). Turn Key's Motion to Dismiss was sustained in part, with this Court dismissing Plaintiff's claims insofar as they alleged constitutional violations due to limitation of off-site medical services, understaffing, underfunding, and lack of training. (Doc. No. 25, p. 10). Thus, the sole remaining basis for Plaintiff's §1983 claim against Turn Key is the allegation that

Turn Key staff failed to provide "an adequate or timely medical evaluation, any assessment, or adequate medical monitoring and supervision or to otherwise care for Mr. Hatfield." (Doc. No. 2, ¶ 39; Doc. No. 25, p. 9).

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      Darius Hatfield was arrested and booked into the Tulsa County Jail on the evening of May 31, 2018. Exh. 3, *Booking Sheet and Inmate Housing History*, at p. 1.

2.      Due to the nature of his charges, Mr. Hatfield was placed on suicide watch initially, as a matter of Tulsa County Jail policy. Exh. 1, *Turn Key Medical Records*, at p. 8.

3.      On the morning of June 1, 2018, Dr. Jawaun Lewis, Turn Key's Psychiatrist at the Tulsa County Jail, performed a suicide precaution evaluation of Mr. Hatfield. Exh. 1 at pp. 8-10. Mr. Hatfield reported no suicidal ideations, reported no prior psychiatric history, and denied any problems. Exh. 1 at p. 8. Dr. Lewis notes that Mr. Hatfield was calm and cooperative, with a pleasant mood and appropriate affect. Exh. 1 at p. 8-9. Dr. Lewis also notes that Mr. Hatfield's "current symptom severity" is "Mild-No significant impact on inmate's ability to function satisfactorily in the current setting." Exh. 1 at p. 9. Dr. Lewis instructed Mr. Hatfield to follow-up as needed, and Mr. Hatfield communicated a "willingness to notify security / medical personnel of any suicidal/homicidal ideation or intent." Exh. 1 at p. 10. Dr. Lewis entered his notes on this evaluation into Mr. Hatfield's medical record at 10:01 a.m., and set an appointment to follow up with Mr. Hatfield in one week. Exh. 1 at p. 10.

4.      Regarding his notation of Mr. Hatfield's symptom severity as "mild," Dr. Lewis testified that: "There's no option to say 'No symptoms'. So anybody that's coming in is "Mild" if they have no symptoms." Exh. 2, *Excerpt from Deposition of Dr. Jawaun Lewis*, 32: 14-15.

2

5.      On the morning of June 1, 2018, LPN Jessica Mobley conducted medical and mental health screenings of Mr. Hatfield. Exh. 1 at pp. 10-18. Mr. Hatfield answered in the negative to the following questions:

- Are you currently thinking of killing or hurting yourself?

- Do you feel there is nothing to look forward to in your future?

- Prior to your arrest, were you extremely depressed, or have little interest or pleasure in things that used to bring you joy?

Exh. 1 at p. 15. Nurse Mobley noted that Hatfield did not "appear to be sad, irritable, emotionally flat, hallucinating or showing signs of other mental illness…." Exh. 1 at p. 16. Mr. Hatfield denied any history of mental health issues or treatment. Exh. 1 at pp. 15-16. Mr. Hatfield answered all screening questions in a manner consistent with a mentally-well individual with no history of mental health issues. Exh. 1 at pp. 15-16.

6.      In a Restrictive Housing Clearance visit for the morning of June 1, 2018 (recorded at 11:16 a.m.), Mr. Hatfield appeared alert and oriented, was cooperative, and did not request any medical or mental health services. Exh. 1 at pp. 19-20.

7.      Mr. Hatfield further denied any suicidal ideation during a drug and alcohol withdrawal evaluation conducted on the morning of June 1, 2018 (recorded at 11:36 a.m.). Exh. 1 at p. 21.

8.      Mr. Hatfield was transferred to a segregated housing unit at 4:19 p.m. on June 1, 2018 pursuant to Tulsa County Jail protocols. Exh. 3, p. 2.

9.      CNA Maureen McAnally saw Mr. Hatfield during restrictive housing rounds on the morning June 2, 2018 (recorded at 8:27 a.m.); Mr. Hatfield did not request any medical or mental health services. Exh. 1 at p. 22.

10. Licensed Professional Counselor (LPC) John Fox completed a further restrictive housing round on the evening of June 2, 2018 and recorded this visit in the chart at 5:35 p.m. Fox wrote that, "Patient reports adaptive functioning within the current incarcerated environment. Patient reports no suicidal ideation or intent. Patient reports knowledge of how to request Mental Health services. Mental health will follow-up weekly while housed in Segregation. Maintain current housing assignment." Exh. 1 at p. 22.

11. CNA Maureen McAnally conducted pill pass on June 3, 2018 and again saw Mr. Hatfield for segregation rounds that morning (note recorded at 7:00 a.m.). Exh. 1 at p. 39. Her chart note reads as follows:

> Inmate was pleasant and talkative. Inmate stated was "slow to get up and his legs weren't moving quickly". Inmate walked to sink, filled up cup, returned to receive meds. Advised I needed to perform a blood pressure check (132/96 p=93). Inmate asked if I checked on the status of his Diltiazem (he questioned during med pass the day before, as well), advised med was on order. Inmate questioned if Lisinopril was administered, confirmed. DO mentioned that IM asked about an antibiotic, when asked inmate stated was only curious about heart med. I asked inmate did he have any other questions, he replied "no" and returned to bed.

Exh. 1 at p. 39.

12. A medical emergency was called at 7:37 a.m. on June 3, 2018 upon discovery that Mr. Hatfield had hung himself. Exh. 1 at p. 39. LPN Moran arrived on scene and began to perform CPR on Mr. Hatfield upon finding that both pulse and respirations were absent. Exh. 1 at p. 39. LPN Hickman arrived and, after calling EMSA, began to administer rescue breaths with an Ambu bag. Exh. 1 at p. 39. LPN Sloan and RN Martin then arrived. Exh. 1 at pp. 23, 39. CPR was continued until EMSA and the Fire Department arrived. Exh. 1 at p. 39.

13. EMSA and the Tulsa Fire Department continued CPR, Mr. Hatfield was intubated, an IV was started, and epinephrine was administered. Exh. 1 at p. 39. A pulse was obtained, and Mr. Hatfield was transported to Hillcrest Hospital via EMSA. Exh. 1 at p. 39.

14.     Darius Hatfield died on June 5, 2018 due to anoxic brain injury as a result of hanging himself. Exh. 4, *Medical Examiner's Report*, p. 1.

15.     During the time of Darius Hatfield's incarceration, Turn Key had adopted policies within the Tulsa County Jail relating to: inmate access to care; the provision of mental health services; receiving screening for inmates; mental health screening and evaluation for all inmates; mental health evaluations for inmates in segregation; and the institution of a suicide prevention program. Exh. 5, *Affidavit of Dr. William Cooper, Turn Key Corporate Representative, with Selected Turn Key Policies within Tulsa County Jail.*

16.     On November 5, 2017, Turn Key's policies, practices, and provision of medical care were subject to an audit by the National Commission on Correctional Health Care ("NCCHC"). All policies referenced in Fact #14 were found to be in full compliance with NCCHC standards. Exh. 6, *2017 NCCHC Audit Results*, pp. 3, 10, 11, 14.

17.     Kathryn J. Wild, RN, MPA, CCHP-RN, an expert witness retained by Turn Key, has opined that the care provided by Turn Key to Darius Hatfield, including Turn Key's intake screening, mental health services, and monitoring, were in full conformance with NCCHC standards and met reasonable and acceptable practices. Exh. 7, *Affidavit of Kathryn J. Wild with Expert Witness Report of Kathryn J. Wild.*

18.     Dr. Bruce J. Cohen, M.D., an expert witness retained by Turn Key, has opined that Turn Key's psychiatric care of Mr. Hatfield was appropriate and that his review of Mr. Hatfield's medical records revealed no evidence of medical negligence or deliberate indifference to Mr.

Hatfield's psychiatric needs. Exh. 8, *Affidavit of Dr. Bruce J. Cohen, M.D. with Forensic Psychiatric Report of Dr. Bruce J. Cohen*.[1]

## ARGUMENT AND AUTHORITIES

**I.     Applicable Legal Standards.**

    A.  Summary Judgment Standards.

Summary judgment shall be granted where the undisputed material facts establish that one party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. FED. R. CIV. P. 56(c). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id*. at 587. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citations omitted). "The first step is to distill the record to uncontested facts and contested material facts favorable to the party claiming injury. But only *genuine* issues of contested *material* fact are entitled to favored status." *Weigel v. Broad*, 544 F. 3d 1143, 1156-57 (10th Cir. 2008). (O'Brien, J., dissenting). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so

---

[1] The expert opinions of Kathryn J. Wild and Dr. Bruce J. Cohen are undisputed, as Plaintiff has not endorsed any expert witnesses in this matter.

6

that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380.

    B.  Legal standards governing Plaintiff's §1983 claim.

    For Plaintiff to succeed on her §1983 claim against Turn Key, she must show that a Turn Key employee, or Turn Key medical staff as a whole, deprived Darius Hatfield of a constitutional right through deliberate indifference to Mr. Hatfield's medical needs, and that this constitutional violation was caused by some policy, practice or custom of Turn Key.

    *i.    Standards governing deliberate indifference claims.*

    As an initial matter, the Tenth Circuit has noted that, "claims based on a jail suicide are considered and treated as claims based on the failure of jail officials to provide medical care for those in their custody." *Barrie*, 119 F.3d, 866. In *Estelle v. Gamble*, 429 U.S. 97, 104, (1976), the Supreme Court held that, "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain" and a violation of a prisoner's Eighth Amendment rights.[2] The Supreme Court was also careful to circumscribe the scope of liability, however. Thus, the Court noted that, "[a]n accident, although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain." *Id*. at 105. There is no deliberate indifference if, "a physician has been negligent in diagnosing or treating a medical condition… Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id*. at 106. Ultimately, the Supreme Court noted that Gamble's claim that "more could have been done by way of diagnosis" was "a classic example of a matter for medical

---

[2] As a pretrial detainee, Plaintiff's claims arise under the Fourteenth Amendment; in such cases, the Tenth Circuit applies "an analysis identical to that applied in Eight Amendment cases." *Lopez v. LeMaster*, 172 F.3d 756, 759 n.2.

judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." *Id* at 107.

The deliberate indifference standard has been refined in the ensuing years, but it remains a difficult standard to meet. In *Whitley* v. *Albers*, 475 U.S. 312, 319 (1986), the Supreme Court noted that deliberate indifference requires, "more than ordinary lack of due care for the prisoner's interests or safety." In *Farmer v. Brennan*, 511 U.S. 825, 837 (1994), the Supreme Court held that deliberate indifference consists of both an objective and subjective component. The objective component is satisfied if the harm suffered is "sufficiently serious." *Farmer*, 511 U.S. at 834; *see also*, *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005). This component is not at issue in this case, given Mr. Hatfield's death by suicide.

Regarding the subjective component, the *Farmer* Court held that, an "official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety…" The Court explained that, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*.; *see also*, *Burk*e, 935 F.3d at 992; *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006).

"This is a difficult standard to meet, as deliberate indifference . . . requires a higher degree of fault than negligence, or even gross negligence." *Randall v. Bd. of Cnty. Comm'rs*, 184 Fed. Appx. 723, 726 (10th Cir. 2006) [3]; *see also Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). In the context of a jail suicide, the Tenth Circuit has held that the defendant must be deliberately indifferent to a

---

[3]All unpublished cases from the Tenth Circuit Court of Appeals are cited for their persuasive value only in accordance with 10th Cir. R. 32.1.

known, "substantial risk of suicide." *Barrie*, 119 F.3d at 869; *see also*, *Gaston*, 229 F. Appx. at 708. Moreover, Defendants must have knowledge "of the specific risk that the deceased inmate would commit suicide." *Cox v. Glanz*, 800 F.3d 1231, 1249-1250 (10th Cir. 2015).

      ii.    *Standards governing municipal liability*.

"[A] claim under § 1983 against either an individual actor or a municipality cannot survive a determination that there has been no constitutional violation." *Crowson v. Wash. Cty. State of Utah*, 983 F.3d 1166, 1186 (10th Cir. 2020). A finding of constitutional violation is a prerequisite to recovery under §1983. Moreover, it is well-established that there is no respondeat superior or vicarious liability under § 1983. *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 694 (1978) ("[W]e conclude that a municipality cannot be held liable solely because it employs a tortfeasor - - or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."). "Although the Supreme Court's interpretation of §1983 in *Monell* applied to municipal governments and not to private entities acting under color of state law, caselaw from this and other circuits has extended the *Monell* doctrine to private § 1983 defendants." *Dubbs v. Head Start, Inc*., 336 F.3d 1194, 1216 (10th Cir. 2003). Accordingly, Turn Key cannot be held liable based solely on the actions or omissions of its employees.

In evaluating §1983 claims against a municipality, the Tenth Circuit has written that "'proper analysis requires [the court] to separate two different issues when a § 1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation.' The absence of an affirmative answer to either of these questions is fatal to a claim against the municipality'" *Crowson*, 983 F.3d at 1186 (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992)).

To be liable, Turn Key must have had an official policy, practice or custom that was the "direct cause" or "moving force" behind the alleged constitutional deprivation. *See Dubbs*, 336 F.3d at 1215; *see also Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) ("[A] plaintiff must show 1) the existence of a municipal policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged."). "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis by the Court). "When employees take actions specifically authorized by policy or custom, their actions can be fairly said to be the municipality's. But when they act inconsistently with official policy or custom, though perhaps even still within the scope of employment, that will not suffice." *Simmons v. Uintah Health Care Special Serv. Dist.*, 506 F.3d 1281, 1284 (10th Cir. 2007). It is not sufficient to merely identify a harm and allege it was the result of a policy or custom. "[S]ome limitation must be placed on establishing municipal liability through policies that are not themselves unconstitutional, or the test set out in *Monell* will become a dead letter. Obviously, if one retreats far enough from a constitutional violation some municipal 'policy' can be identified behind almost any such harm. . . ." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).

Lastly, the Tenth Circuit has distinguished between claims against municipalities that are based on the alleged constitutional violations of individual officers and claims that are based on the "sum of actions" of a municipality's officers. *Crowson*, 983 F.3d at 1191. The Tenth Circuit has held that, "where the actions of a municipality's officers do not rise to the level of a constitutional violation and the claim against the municipality is based on it serving as the driving force behind those actions, liability cannot lie." *Id*.

However, where "the acts or omissions of no one employee may violate an individual's constitutional rights, the combined acts or omissions of several employees acting under a governmental policy or custom may violate an individual's constitutional rights." *Garcia v. Salt Lake County*, 768 F.2d 303, 310 (10th Cir. 1985); *see also Crowson*, 983 F.3d at 1191. In such cases, this District Court has found liability in §1983 medical indifference cases where "medical staff knew, or should have known because it was obvious" that a plaintiff's medical condition presented a substantial risk of serious harm, and this risk was disregarded. *Bond v. Regalado, et al.*, No. 18-CV-231-GKF (N.D. Okla. Aug. 27, 2021).

## II.     Turn Key is Entitled to Summary Judgment on Plaintiff's §1983 Claim.

The undisputed facts of this case dictate that Turn Key is entitled to summary judgment on Plaintiff's §1983 claim. Mr. Hatfield was consistently evaluated and monitored for signs or symptoms of suicidal ideation throughout his brief incarceration. At no time did Mr. Hatfield's words or actions indicate that he was at substantial risk of committing suicide; indeed, Mr. Hatfield consistently denied suicidal ideation or any other mental health issue. No member of Turn Key medical staff was deliberately indifferent to Darius Hatfield's medical needs, and, accordingly, there has been no constitutional deprivation for which Turn Key could be held liable. Even should this Court find that some member of Turn Key's medical staff was deliberately indifferent to Mr. Hatfield's medical needs, Turn Key is nevertheless entitled to summary judgment, as Turn Key's policies, practices, and procedures did not cause any such constitutional deprivation.

A. <u>The record reveals that Turn Key staff appropriately evaluated and monitored Darius Hatfield.</u>

The undisputed facts of this case reveal that various medical personnel employed by Turn Key came into contact with Mr. Hatfield, both evaluating and continuously monitoring Mr. Hatfield, throughout his brief incarceration at the Tulsa County Jail. At no time did Mr. Hatfield

inform any Turn Key employee that he was experiencing suicidal ideations or in any other manner give any Turn Key employee reason to believe that he was at a substantial risk of committing suicide. Plaintiff cannot show that there has been a deprivation of Mr. Hatfield's constitutional rights, and Turn Key is entitled to summary judgment accordingly.

### i.    Dr. Jawaun Lewis

On the morning of June 1, 2018, the morning following Mr. Hatfield's late-night arrest, Turn Key Psychiatrist Dr. Jawaun Lewis evaluated Mr. Hatfield's mental health condition. *Supra*, Statement of Undisputed Facts, ¶ 3. Dr. Lewis noted that Mr. Hatfield reported no suicidal ideations, had no prior psychiatric history, and reported no problems at the time of evaluation. *Id*. Further, Mr. Hatfield was noted to be calm and cooperative, with a euthymic / pleasant mood and appropriate affect. *Id*. In short, nothing in Dr. Lewis's evaluation of Mr. Hatfield revealed that Mr. Hatfield was at a substantial risk of committing suicide. Dr. Lewis accordingly noted that Mr. Hatfield could be moved out of suicide watch and that Dr. Lewis would follow up with Mr. Hatfield in a week. *Id*. Dr. Lewis would have no further occasion to interact with Mr. Hatfield during his incarceration. Dr. Lewis was not deliberately indifferent to Mr. Hatfield's medical needs, and, to the contrary, promptly and appropriately evaluated Mr. Hatfield.

### ii.    LPN Jessica Mobley

Also on the morning of June 1, 2018, LPN Jessica Mobley performed initial intake assessments of Mr. Hatfield. *Supra*, Statement of Undisputed Facts, ¶ 5. Contrary to Plaintiff's allegations, Mr. Hatfield, again, denied suicidal ideation or thoughts of self-harm. *Id*. Mr. Hatfield denied that he was depressed prior to his arrest, denied that he "felt there was nothing to look forward to," and denied any history of mental health problems or prior suicide attempts. *Id*. Lastly, LPN Mobley noted that Mr. Hatfield did not appear to be sad. *Id*.

12

LPN Mobley appropriately screened Mr. Hatfield for any mental health symptoms and for any indications that Mr. Hatfield would be at risk of committing suicide. The results of this screening are clear: Mr. Hatfield gave LPN Mobley no reason to believe that he was at a substantial risk of suicide. LPN Mobley was not deliberately indifferent to Mr. Hatfield's medical needs.

     *iii.*     *Nurse Rhonda Morrow*

Turn Key Nurse Rhonda Morrow performed a drug and alcohol evaluation on Mr. Hatfield at 11:36 am on June 1, 2018. *Supra*, Statement of Undisputed Facts, ¶ 7. During the evaluation, Mr. Hatfield denied anxiety and denied any thoughts of suicide or self-harm. *Id*. Mr. Hatfield gave Nurse Morrow no reason to believe that he was at a substantial risk of committing suicide, and Nurse Morrow was not deliberately indifferent to Mr. Hatfield's medical needs accordingly.

     *iv.*     *CMA Maureen McAnally*

Maureen McAnally performed "Restrictive Housing Rounds" on June 2, 2018 and June 3, 2018. *Supra*, Statement of Undisputed Facts ¶¶ 9, 11. On June 2, at 8:27 am, Nurse McAnally noted that Mr. Hatfield did not request medical or mental health services. *Supra*, Statement of Undisputed Facts no. 9. During her restrictive housing rounds on June 3, 2018 at 7:00 am, Nurse McAnally was the last Turn Key employee to interact with Mr. Hatfield prior to his suicide. *Supra*, Statement of Undisputed Facts no. 11. Mr. Hatfield, again, did not give Nurse McAnally any reason to believe that he was at risk of committing suicide: Nurse McAnally notes that Mr. Hatfield was talkative and pleasant and inquired into the status of certain of his medications that were on order. *Id*. Nurse McAnally was given no indication that Mr. Hatfield was at substantial risk of committing suicide, and she was not deliberately indifferent to Mr. Hatfield's medical needs.

13

*v.*     *John Fox, LPC*

Lastly, the only other Turn Key employee to see Darius Hatfield prior to his suicide was Licensed Professional Counselor, John Fox. LPC Fox interacted with Mr. Hatfield during restrictive housing rounds on June 2, 2018 at 5:35 pm; Fox noted that Mr. Hatfield had no requests for medical or mental health services at the time. *Supra*, Statement of Undisputed Facts, ¶ 10. Further, LPC Fox noted that Mr. Hatfield reported no suicidal ideation or intent, and Mr. Hatfield told LPC Fox that he understood how to request mental health services. *Id*. LPC Fox, or another member of Turn Key's mental health staff, planned to follow-up weekly with Mr. Hatfield. *Id.* LPC Fox was not deliberately indifferent to Mr. Hatfield's medical needs.

B. No employee of Turn Key, or Turn Key medical staff collectively, was deliberately indifferent to Darius Hatfield's medical needs, and therefore there was no constitutional deprivation.

Turn Key is entitled to summary judgment on Plaintiff's §1983 claim. Throughout Mr. Hatfield's brief incarceration at the Tulsa County Jail, Turn Key, through its employees, appropriately evaluated and monitored Mr. Hatfield for signs of suicidal ideation. Mr. Hatfield continually denied feeling suicidal, continually denied having a history of depression, prior suicide attempts or other mental illness, and, according to all relevant documentation, conducted himself in a manner that would not have alerted any Turn Key employee to *any* risk of suicide, much less a substantial risk of suicide. Under these facts, no rational trier of fact could find that any Turn Key employee, or Turn Key medical staff, was deliberately indifferent to Darius Hatfield's medical needs. Mr. Hatfield's harm was not caused by any constitutional violation, and Turn Key is entitled to summary judgment. *See Crowson*, 983 F.3d at 1186. ("[A] claim under § 1983 against either an individual actor or a municipality cannot survive a determination that there has been no constitutional violation.")

14

The Tenth Circuit has regularly held that summary judgment is appropriate in jail suicide cases under facts that are substantially more inculpatory than those of the present case. In *Gaston*, 229 F. App'x 702, the Tenth Circuit reversed a District Court's denial of summary judgment. The District Court had denied summary judgment because: the decedent had exhibited a change in behavior, becoming insubordinate on the day of his suicide; the decedent's cellmates had heard him discussing suicide; the decedent had been moved to a single-person cell, which was sometimes used as a suicide-watch cell; the decedent had received a letter from his girlfriend on the day of his suicide; and the decedent had covered the window to his cell with paper for a significant period of time on the day of his suicide. *Id.* at 710-711. The Tenth Circuit held that these facts were insufficient to establish that any defendant had knowledge that the inmate was at a substantial risk of committing suicide and reversed the District Court's denial of summary judgment. *Id.* at 712.

In *Cox v. Glanz*, 800 F.3d 1231 (10th Cir. 2015), the Tenth Circuit again overturned a District Court decision denying summary judgment to defendants in a §1983 jail suicide case. The record revealed that plaintiff's decedent had alerted a medical staff member, a Nurse Taylor, to a history of schizophrenia, but otherwise had affirmatively denied suicidal ideations or any mental health needs. *Id.* at 1252-1253. Subsequently, plaintiff's decedent sent a message to medical staff in which he stated that he needed to "speak with someone about problems." *Id.* at 1253. A second nurse attempted to respond to the message, but found that the inmate had been moved and was unable to see him at that time. *Id.* Plaintiff's decedent was next found to have committed suicide. The District Court denied the motion for summary judgment of defendant Glanz, who was sued under a *Monell* supervisory theory of liability. *Id.* at 1236. The Tenth Circuit reversed the District Court's denial of summary judgment, finding that, under the facts presented, "neither [Glanz] nor

15

any identified staff member whom he supervised possessed knowledge that the particular inmate who committed suicide presented a substantial risk of taking his own life." *Id*. at 1236.

In the present case, there are simply no facts within the record that would suggest that Turn Key or any member of Turn Key medical staff had any reason to believe that Darius Hatfield was at a substantial risk of committing suicide. Every member of Turn Key's medical staff who was involved in Hatfield's care treated or evaluated him appropriately, and no member of Turn Key's medical staff was deliberately indifferent to Mr. Hatfield's mental health needs. Not only is this conclusion evident from Mr. Hatfield's medical records, Turn Key has also produced two uncontroverted expert opinions that wholly support Turn Key's care of Darius Hatfield. Accordingly, Darius Hatfield's death was not the result of any constitutional violation on the part of any member of Turn Key's medical staff.

Nor is this a case in which the "combined acts or omissions of several employees acting under a governmental policy or custom …violate[d] an individual's constitutional rights." *Garcia*, 768 F.2d, at 310. Every member of Turn Key staff who interacted with Mr. Hatfield appropriately evaluated or monitored Mr. Hatfield, and, the record makes clear that no member of Turn Key staff was given any reason to believe that there was a substantial risk that Mr. Hatfield would commit suicide. From the record in this case, no reasonable jury could conclude that "medical staff knew, or should have known because it was obvious" that there was a substantial risk that Darius Hatfield would commit suicide. *Bond v. Regalado*, No. 18-CV-231-GKF (N.D. Okla. Aug. 27, 2021). Plaintiff has not suffered a constitutional deprivation under a collective or "systemic" theory of liability. The undisputed facts of this case show that Plaintiff's harm was not "caused by a constitutional violation"; this is dispositive of Plaintiff's §1983 claim. *Crowson*, 983 F.3d at 1186.

C. <u>Even if Plaintiff can show that Mr. Hatfield's death was caused by a constitutional deprivation, Plaintiff cannot show that such deprivation is attributable to a policy, practice, or custom of Turn Key.</u>

There is no *respondeat superior* or vicarious liability under § 1983. *Monell*, 436 U.S. at 694. In order for Turn Key to be held liable, Plaintiff must show that Turn Key had an official policy, practice or custom that was the "direct cause" or "moving force" behind the alleged constitutional deprivation. *See Dubbs*, 336 F.3d at 1215; *see also Bryson*, 627 F.3d at 788.

Turn Key had written policies in place relating to the screening, monitoring, and care of potentially suicidal patients; these policies were appropriate and were not constitutionally infirm. Indeed, an NCCHC audit conducted less than a year prior to Plaintiff's death found that Turn Key's policies relating to the screening, monitoring, and care of suicidal inmates were in full compliance with NCCHC standards. Nurse Kathryn Wild, an expert certified as a Correctional Health Professional by the NCCHC, has opined that Turn Key's care of Mr. Hatfield was fully in compliance with NCCHC standards.

Plaintiff has offered no expert opinion, or generated any evidence, that would support her theory of *Monell* liability. Plaintiff cannot demonstrate that any policy, practice, or custom of Turn Key caused a constitutional violation to Mr. Hatfield. Turn Key is entitled to summary judgment.

## <u>CONCLUSION</u>

The undisputed facts of this case demonstrate that Turn Key medical staff appropriately evaluated, monitored, and cared for Mr. Hatfield throughout his incarceration at the Tulsa County Jail. No member of Turn Key medical staff, or Turn Key medical staff as a whole, was given any reason to believe that Mr. Hatfield was at a substantial risk of committing suicide, and Turn Key was not deliberately indifferent to Mr. Hatfield's medical needs. Mr. Hatfield's death was not the

result of any constitutional violation attributable to Turn Key. Accordingly, summary judgment should be granted.

Respectfully submitted,

/s/ Jo Lynn Jeter
**Joel L. Wohlgemuth**, OBA #9811
**Jo Lynn Jeter**, OBA #20252
**W. Caleb Jones**, OBA #33541
**NORMAN WOHLGEMUTH**
3200 Mid-Continent Tower
401 S. Boston Ave.
Tulsa, OK  74103
Telephone:  (918) 583-7571
Facsimile:  (918) 584-7846

**ATTORNEYS FOR DEFENDANT,
TURN KEY HEALTH CLINICS, LLC,**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 1, 2022, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

G. Gene Thompson
Margaret Cook
Keri Palacios
Howard Berkson
Donald J. Slaughter
Keith Wilkes

/s/ Jo Lynn Jeter
**Jo Lynn Jeter**

19